86  159
98  598

[No. 13838.   Department One. — October 17, 1890.]

RICHARD J. FLOYD ET AL., RESPONDENTS, *v.* IRA P. RANKIN ET AL., DEFENDANTS AND RESPONDENTS, AND JOHN O. EARL ET AL., DEFENDANTS AND APPELLANTS.

TRUST DEED — LICK TRUST — CONSTRUCTION — CALIFORNIA SCHOOL OF MECHANICAL ARTS — POWER AND DUTY OF TRUSTEES — RIGHTS OF MANAGERS — ACQUISITION OF TITLE. — Under the deed of trust executed by James Lick to certain trustees therein named, by the terms of which large sums of money were to be realized by the trustees from the property conveyed, and applied to various charitable and other beneficial purposes, and by the fourteenth clause of which the trustees were required, at a cost of five hundred and forty thousand dollars, to found and endow "The California School of Mechanical Arts," under the direction of seven persons named, who were directed to acquire the site thereof, and to form a corporation of themselves and successors appointed by the survivors of them, never exceeding seven in number, to own, control, and manage the said institution, the trustees have no other power or duty than to furnish the money up to the amount named, to be expended as directed by the seven persons named, and the latter are required to select and acquire the title to the site, and take the same in their own names or in the name of the corporation, if formed before the title is acquired.

ID. — VALIDITY OF CORPORATION. — The corporation formed as provided for in the deed of trust is a valid body.

ID. —AMBIGUITY OF TERMS — ASCERTAINMENT OF INTENT. — The meaning of the fourteenth clause of the trust being ambiguous and uncertain, in ascertaining the intention of the donor, reference may be had to other parts of the deed providing for the acquisition and improvement of lands, and particularly to other trusts of like character, indicating the general intent of the donor as to the acquisition of title and the expenditure of the trust funds.

ID. — MANAGEMENT OF INSTITUTION — DIRECTION OF ENDOWMENT — EXPENDITURE OF TRUST FUNDS. — The parties who are required to acquire the site and direct the founding and endowment of "The California School of Mechanical Arts" cannot call for the whole of the money and expend it themselves, but the trustees are required to expend the money donated under the direction of the parties mentioned, who are, however, the sole judges as to how, for what purpose, and when the money is to be expended, subject only to the purposes mentioned in the trust deed, and it is the duty of the trustees to furnish the money needed so long as the expenditure is within and for the purpose named in the deed, and to pay any surplus remaining to the corporation which is to control and manage the institution.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion of the court.

*John H. Boalt,* for Appellants.

*Cope, Boyd & Fifield,* for Plaintiffs and Respondents.

*S. W. Holladay,* for California Academy of Sciences, Defendant and Respondent.

*Nathaniel Holland,* for the Society of California Pioneers, Defendant and Respondent.

WORKS, J. — James Lick executed a deed of trust to certain persons named therein, by which large sums of money were to be realized from the property conveyed, and applied to various charitable and other beneficial purposes. Some changes were subsequently made in the trustees, which it is unnecessary now to notice. The plaintiffs in this action are the present trustees under

the trust deed, and bring this suit against the benefi-
ciaries under the deed, and various persons appointed
thereby to assist in carrying its provisions into effect, to
have certain parts of the deed construed for their guid-
ance. The deed recites certain facts necessary to a cor-
rect understanding of its objects and purposes, and to
give it the proper legal effect, names the trustees to act
under it, describes the property, real and personal, con-
veyed by it, and provides that the property so conveyed
shall be for the "uses and purposes hereinafter men-
tioned, and to have and hold the same unto the said
parties of the second part, their successors and assigns,
in trust for the following purposes, to wit": —

The first clause defines the general powers and duties
of the trustees, with reference to the property conveyed,
and is as follows: "1. To enter into possession of, have,
receive, and recover the said property, and rents and
profits thereof (except as herein excepted), and to let and
to lease, until sale, and to sell, convey, and dispose of
the same, and to convert the same into money (except
as herein excepted), as rapidly as judicious management
will permit; and out of the proceeds to make the pay-
ments hereinbelow directed; and a majority of said trus-
tees shall determine when, on what terms, and what
price, and on what credit the same shall be disposed of.
And a majority of said trustees may likewise execute,
acknowledge, and deliver all deeds, transfers, convey-
ances, assignments, and other instruments necessary
and proper for the purposes aforesaid, and in all other
matters in the execution of the trusts herein declared.
And in case of the absence from the state of any of the
said parties of the second part, trustees aforesaid, a ma-
jority of them shall be capable of executing the trusts
herein created, without any notice to such absent trustee
or trustees."

The second clause provides for the payment of certain
sums named to relatives of the donor. The third clause

provides for the expenditure of seven hundred thousand dollars by the trustees in the purchase of land, and construction of a telescope thereon, with all the machinery appertaining thereto, and appropriately connected therewith, and a suitable observatory; and that upon the completion thereof the trustees convey the land, telescope, machinery, and observatory to the regents of the University of California; and if any of the moneys set apart for said purpose remain unexpended, that the same be paid over to said regents, to be invested in certain bonds mentioned, the income to be devoted to the maintenance of the telescope and observatory, and in promoting science.

The fourth, fifth, sixth, seventh, and eighth clauses provide for the payment of certain sums to various charitable and other institutions.

The ninth provides for the erection of monuments at the graves of the father, mother, sister, and grandfather of the donor.

The tenth and eleventh trusts are declared as follows: " 10. And in further trust out of the proceeds of said property to expend one hundred thousand dollars ($100,000) to found an institute to be called the ' Old Ladies' Home,' to be located in San Francisco, as a retreat for women who are unable to support themselves, and who have no resources of their own; the right of admission thereto to be prescribed by A. B. Forbes, J. B. Roberts, Ira P. Rankin, Robert McElroy, and Henry M. Newhall, and the survivors of them, who shall receive the title to the lands on which the same shall be erected, and who shall hold the same until the same can be conveyed to a corporation authorized to maintain such an institution, said sum of one hundred thousand dollars ($100,000) to be expended under the direction of said Forbes, Roberts, Rankin, McElroy, and Newhall, and the survivors of them, and the site for the institution to be selected and acquired by them as soon as possible.

"11. And in further trust to expend the sum of one hundred and fifty thousand dollars ($150,000), under the direction of H. M. Newhall, Ira P. Rankin, Dr. J. D. B. Stillman, and John O. Earl, and the survivors of them, in the erection and maintaining in the city of San Francisco of free baths, the site or sites therefor to be acquired and held by the persons last named, and the survivors of them, in trust, to forever maintain such baths for the free use of the public, under proper and reasonable regulations; said baths to be erected as soon as practicable to raise the money after the money has been provided to erect said telescope."

The twelfth clause provides for the erection of a monument in Golden Gate Park, in the city of San Francisco, to the memery of Francis Scott Key, author of "The Star Spangled Banner."

The thirteenth calls for the erection of a group of bronze statuary at the city hall in San Francisco.

The fourteenth clause is as follows: "14. And in further trust, to found and endow, at a cost of five hundred and forty thousand dollars ($540,000), an institution to be called 'The California School of Mechanical Arts,' the object and purpose of which shall be to educate males and females in the practical arts of life, such as working in wood, iron, and stone, or any of the metals, and in whatever industry intelligent, mechanical skill now is or can hereafter be applied; such institution to be open to all youths born in California. The institution shall be founded and endowed under the direction of said Dr. J. D. B. Stillman, Horace Davis, A. S. Hallidie, John Oscar Eldridge, John O. Earl, and Hon. Lorenzo Sawyer, and the survivors of them, who are directed to acquire the site therefor, and to form a corporation, the only corporators being themselves; to own, control, and manage the said institution, the members of said corporation never to exceed seven, and vacancies in the membership to be filled from time to time by the survivors."

It is this fourteenth clause of the deed that we are called upon to construe, but we have set out other parts of the deed, because we believe they tend to throw some light upon the clause in controversy, and to show the intention of the grantor in making this provision for the California School of Mechanical Arts. Other parts of the deed need not be set out or referred to, as they do not affect the question before us, except the provision that the residue of the property, after making the payments mentioned, be made over, in equal parts, to the California Academy of Sciences, and the Society of California Pioneers, to be used by them in the construction of certain buildings, and for other purposes.

The corporation mentioned in the fourteenth trust was organized before the site for the institution was acquired, the reason assigned therefor being that it was feared that on account of necessary delays in carrying out the trusts under said deed a sufficient number of the parties named would not survive to form the corporation at a later day. The California School of Mechanical Arts, the Society of California Pioneers, and the California Academy of Sciences filed answers, each calling upon the court to give a construction of the fourteenth clause of the deed above set out.

The court below found and decreed, in substance, that under the fourteenth clause the plaintiffs, as surviving trustees, and their successors, possessed the power, and it was their duty, to found, endow, and establish, ready to be put in operation, the institution named in said trust; that they are the executors of said trust, and the active promoters of the purposes of the donation; that in executing the trust the plaintiffs are to consult and seek the advice, guidance, co-operation, and concert of action of the persons named in said trust, and their survivors, or such of them as consent to act, and that it is the duty of such persons in their individual capacity to extend to the plaintiffs their advice, guidance, and co-op-

eration in the establishment of said institution, and select and secure a site for said institution, the title to which is to be taken in the names of the plaintiffs as surviving trustees, or their successors in the trust, and is to be paid for by the trustees out of said fund of five hundred and forty thousand dollars; that in case the parties named in the trust fail to co-operate with the plaintiffs, or refuse to select the site, the trustees have the power, and it is their duty, to acquire the site and establish the institution; that upon the establishment and completion of said institution, and that the same is ready to be put in operation, it is the duty of the trustees to convey, transfer, and set over the same to the corporation referred to in said trust, together with any balance remaining unexpended of said sum of five hundred and forty thousand dollars, and when so conveyed the said corporation is to own, control, and manage the said institution and the surplus fund as an endowment; that the corporation the California School of Mechanical Arts is a valid corporation; that the Honorable Lorenzo Sawyer, although he may have resigned as a member and director of said corporation, is still entitled to act as an individual under said trust; that no part of said fund is to be paid to the individuals named in said trust; that in case of disagreement among the persons named in said trust, or the survivors of them, as to the site or the advice to be given to the trustees, the latter may act upon the advice of such of said persons as they may think best.   This construction was and is satisfactory to all of the parties concerned except the parties named in said trust, and the corporation organized thereunder, the California School of Mechanical Arts.   They appeal from the judgment.   The case was submitted in the court below on the pleadings, and the judgment was founded upon the construction of the deed, without other evidence.

The contention of the appellant is, that the intention

of the donor by this clause in the deed was to vest in the parties named therein the sole power of selecting and acquiring title to the site for the institution to be erected; that they should take the title thereto in themselves, and upon the organization of the corporation mentioned they should convey the same to such corporation, which should thereafter hold the title and control the institution; that the duty of founding and endowing the institution rested upon the persons named in the trust; and that the only duty of the plaintiffs, the general trustees, was to furnish the money required to be furnished for the purpose. On the other hand, the respondents contend that, taking the whole instrument together, the particular clause in controversy must be construed as imposing upon the general trustees the duty of founding and endowing the institution; that the title to the site must be taken in the name of the trustees, and the building constructed, furnished, and fitted up by them; that when completed, and ready for use, the trustees must convey the same to the corporation, and that the only right and duty of the parties mentioned in the fourteenth trust is to co-operate with the trustees, and advise and counsel with them as to the selection and purchase of a site, and the construction and fitting up and equipment of the building, and to organize the corporation required to be organized.

It must be admitted that, taking the fourteenth trust alone, or the whole of the provisions of the deed together, the meaning of this trust is ambiguous and uncertain. But after a careful study of the whole deed, we feel ourselves constrained to disagree with the court below. The first clause in the deed gives the trustees power to deal with and dispose of the property conveyed, and has no relation to their powers and duties with respect to property to be purchased for charitable and beneficent purposes thereinafter provided for. It simply gives them power to convert the property conveyed into money, and

to place themselves in a position to furnish the means necessary to carry out the donor's benefactions. This clause, therefore, lends us no aid in this controversy. The same may be said of most of the trusts provided for, which consist merely of the payment of money for certain purposes, or to certain existing charitable or other corporations, to be used by the latter. In these cases nothing is to be done by the trustees but to pay over to the persons named the amounts specified.

We must look for assistance, if any can be obtained from other parts of the deed, to those parts which provide for the acquisition and improvement of lands. Of these may be mentioned the third, which provides for the purchase of land, and the construction of a telescope and observatory. Here there is no question as to who shall select the land to be purchased, as it is provided in express terms that it shall be lands designated by the party of the first part; nor can there be any question as to who is to take and hold the title. The trustees are required to purchase the land, and when the telescope and observatory are constructed, to convey it to the regents of the University of California, and turn over to said regents any surplus of the seven hundred thousand dollars remaining unexpended. There is nothing uncertain in the declaration of this trust, nor does it aid us in arriving at the meaning and intention of the donor in the fourteenth clause of the deed.

The tenth trust is more nearly like the one under consideration, and we think tends to show the general intent of the donor as to donations of this class. The tenth trust requires the trustees to expend one hundred thousand dollars to found an "Old Ladies' Home." The right of admission thereto is to be prescribed by certain individuals named, "who shall receive the title to the lands on which the same is to be erected, and hold the same until it can be conveyed to a corporation authorized to maintain such an institution; the money to be expended

under the direction of the parties named, and their survivors, and the site for the institution to be selected and acquired by them as soon as possible.

The eleventh trust is of a like kind, and is similar in its provisions. It provides that the trustees shall expend the sum of one hundred and fifty thousand dollars, under the direction of certain persons named, and their survivors, the site or sites therefor to be acquired and held by the persons named.

In none of these provisions is the deed clearly or accurately worded, but the general intent of the donor is apparent. Whenever real estate is to be acquired and improved for a charitable or beneficial purpose, third parties are called in to acquire and hold the title, and direct the expenditure of the money; and the only duty imposed upon the trustees is to furnish the money to be expended. In neither of these cases could the trustees properly take or hold the property in their own names.

Although the fourteenth trust is even more inaccurately worded, we think the meaning and intent of this clause of the deed must be held to be the same as in the others. In this trust, the trustees are required, not to expend a certain sum of money under the direction of other persons, but to " found and endow the institution at a cost of a certain sum." This is to be done under the direction of certain persons named, just as in the other two trusts of a like kind. The words " found and endow," used in this connection, must be held to mean the same thing as the requirement in the two other trusts of a like kind that they shall expend the money for the purpose. This, it seems to us, is made clear by other provisions contained in the fourteenth trust. The parties named, and not the trustees, are required to acquire the site. This, of course, is equivalent to saying that they shall acquire the title to the site. They are not required to acquire the site for the trustees, nor are the trustees given any power or authority to act in the selec-

tion of the site, or in acquiring the title thereto. The parties named are to acquire the site, and form a corporation consisting of their own number, to own, control, and manage the institution. The object of this provision must be apparent. The power to acquire the site, hold the title thereto, and manage the institution is directly cast upon these parties; but in order that their power may be perpetuated, they are required to form themselves into a corporation, and the manner in which vacancies in their number may be filled is provided.

As we construe this trust, therefore, the trustees have no other power or duty in this connection than to furnish the money, up to the amount named, to be expended as directed by the other parties named. The latter are required to select the title to the site, and take the same in their own names; or, if the corporation provided for is formed before the title is acquired, it might, with equal propriety, be taken directly to the corporation, as the ultimate object of the trust is to vest the title in the corporation, and not in the individuals. We do not regard it as of any importance whether the corporation is formed before the site is acquired or after, or whether the title to the site is conveyed to the individuals named, and by them conveyed to the corporation, or is conveyed directly to the latter in the first instance. These matters relate to the mere form of procedure under the deed, and cannot affect the substance of its provisions, which is that the title shall finally vest in the corporation. It is probable that action by the individuals, as such, was provided for with the idea that action might be necessary before a corporation could or would be formed, but what the reason for it was is not material.

The question whether the trustees are bound to pay over at once to the individuals or corporation the sum of money named, or to furnish it when needed, and in the amounts and for the purposes directed by them, is not so easily answered; but in the light of the provisions of

the other parts mentioned, and set out above, we are of the opinion that the parties who are required to acquire the site and direct the founding and endowment of the institution cannot call for the whole of this money, and expend it themselves. In this clause the other trustees are required to expend the money donated, under the direction of the parties mentioned. This, we think, is the meaning of this trust. The parties named are, however, the sole judges as to how, for what purpose, and when the money is to be expended, subject only to the purposes mentioned in the trust. The trustees have nothing to say in this matter. They furnish the money to found and endow the institution, "under the direction" or as directed by the parties named; and whenever the expenditure of any money is required or directed by them, or by the corporation consisting of themselves and their successors, it is the duty of the trustees to furnish the same, so long as the expenditure is within and for the purpose named in the deed. And upon the institution being founded and endowed, as required by the deed, if there be a surplus of the money donated remaining in the hands of the trustees, it should be paid to the corporation, which is given the control and management of the institution.

We have been unable to find anything in this deed tending to show an intention on the part of the donor that the parties mentioned in this trust are to act as the mere advisers of the trustees, or that the trustees may act without, or in opposition to, their direction, or that the title to the property should be taken by or in the name of the trustees, and by them conveyed to the corporation. On the contrary, the parties mentioned in the trust are to be the actors in the matter of acquiring the site, and directing the improvement of the property; and they alone could convey the title to the property, because they, and not the trustees, are expressly required to acquire such title. The court below was right in

holding that the corporation provided for in the deed was a valid corporation. Counsel for the respondents, the trustees, ask us, in case we do not agree with the court below, to answer categorically certain questions, eighteen in number, set out in the complaint, and affecting, as it is claimed, the proper construction of the trust under consideration. Many of these questions are repetitions of each other, or present the same questions in different forms. We have answered the material questions, and the really controverted ones, as presented by the record, and need not extend this necessarily long opinion by attempting to answer these numerous questions, the answers to which are not necessary to a proper and full determination of the matters in controversy.

The judgment is reversed, with instructions to the court below to enter judgment in accordance with this opinion.

Fox, J., and Paterson, J., concurred.