[14551. In Bank.—June 12, 1893.]

98   591
122   54

## RICHARD S. FLOYD ET AL., RESPONDENTS, v. HORACE DAVIS ET AL., APPELLANTS.

LICK TRUST—APPROPRIATION FOR SCHOOL OF MECHANICAL ARTS—INTEREST UPON ENDOWMENT FUND, WHEN NOT ALLOWED—EXCUSABLE DELAY OF TRUSTEES.— Under the terms of the trust deed of James Lick, making it the duty of the trustees to convert the trust property into money, and out of the proceeds, among other trusts, "to found and endow at a cost of five hundred and forty thousand dollars, an institution to be called the 'California School of Mechanical Arts,'" and to convey the residue, after discharging the trusts, in equal proportions to the California Academy of Sciences and the Society of California Pioneers, the School of Mechanical Arts is not entitled to interest upon its endowment fund prior to the time when funds came into the hands of the trustees applicable to such trust, in the absence of inexcusable delay in the execution of prior trusts; nor is it entitled to interest after such date to the depletion of the residue of the trust fund, by delay not occurring through fault or neglect of the trustees; nor for the time during which the payment of the money was delayed by the refusal of the school to accept the principal sum, without interest, and by litigation in consequence of such refusal.

ID.—STATUARY TRUST FUND—EXPENSES OF REJECTED MODELS AND DIAGRAMS. —The provision in the James Lick trust deed that the trustees erect a "group of bronze statuary, well worth one hundred thousand dollars," at the city hall in the city and county of San Francisco, means that one hundred thousand dollars should be honestly and intelligently expended in the erection of the statuary, and expenses incurred by the trustees for models, diagrams, etc., furnished under an advertisement by the trustees, to be used in the erection of the statuary, but which proved unsatisfactory and were rejected, should be charged to the general trust fund, and not to the statuary fund.

ID.—BATH TRUST FUND—COMPENSATION OF TRUSTEES.—Under the provision in such trust deed authorizing the trustees "to expend the sum of one hundred and fifty thousand dollars in the erection and maintaining in the city of San

Francisco of free baths," under the direction of the trustees, compensation allowed to such trustees for services rendered in the matter of the erection and maintaining of the free baths, should be charged to the bath trust fund, and not to the general trust fund.

ID.—TELESCOPE TRUST FUND—PAYMENT FOR LEGAL SERVICES AND TRAVELING EXPENSES—COST OF CONSTRUCTION.—Under the provisions of such trust deed authorizing the trustees "*to expend the sum of seven hundred thousand dollars for the purpose of purchasing land and constructing and putting up on such land a powerful telescope (superior to and more powerful than any telescope ever made),*" expenditures incurred by the trustees for legal services rendered for the express benefit of the telescope trust, and traveling expenses of the president of the board of trustees on telescope business, should be charged to the telescope trust fund, as part of the cost of construction, and not to the general fund.

ID.—ACTION BY TRUSTEES—ALLOWANCE OF FEES OF ATTORNEYS FOR PARTICULAR TRUSTS.—In an action by the trustees of the Lick trust for a settlement of their accounts, and for permission to pay over to the residuary donees a part of what would, in the end, be coming to them, where the various beneficiaries named in the trust deed appeared by answer and cross-complaint, and the action was virtually transformed into a contest between the various trusts as against the residuary donees, the attorneys' fees allowed by the court to the attorneys for the various beneficiaries under the trust deed, should not be charged to the main trust fund, but each particular trust should be charged with its own attorney's fee.

ID.—PREMATURE PAYMENT OF PART OF RESIDUE OF TRUST FUND.—Under a provision in the Lick trust deed authorizing the trustees, after discharging the previous trusts and making the payments provided for to make over and transfer the residue of the proceeds of the property in equal proportions to the California Academy of Sciences and the Society of California Pioneers, the court has no authority, before the previous trusts are discharged and the payments therein provided for all made, to order the trustees to pay to such societies the sum of three hundred thousand dollars each as a portion of the "residue" coming to them.

ID.—EQUITY FOLLOWS THE LAW—PROVISIONS OF TRUST DEED.—Equity is bound by the rules *of* law, and cannot controvert the law, nor set aside the provisions of a trust deed contrary to the will of the trustee, or contrary to his intentions *as* evidenced *by his instructions.*

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.

The facts are stated in the opinion of the court.

*Nathaniel Holland,* for Society of California Poineers, Appellant.

*S. W. Holladay,* for California Academy of Sciences, Appellant.

*John H. Boalt,* and *Harold Wheeler,* for California School of Mechanical Arts et al., Defendants, Appellants, and Respondents.

*Boyd, Fifield & Hoburg,* and *W. W. Cope,* for Richard S. Floyd et al., Plaintiffs and Respondents.

*John B. Mhoon,* for the Regents of the State University, Respondents.

*Horace Philbrook,* for Ira P. Rankin and John O. Earl, Respondents.

GAROUTTE, J.— This action was brought by the plaintiffs, as surviving trustees of the James Lick trust, against the various beneficiaries under the trust deed, for two purposes: 1. That the accounts of the trustees might be examined, allowed, and settled, and their administration of the trust sanctioned. 2. That they might have the permission of the court to pay over to the California Academy of Sciences and the Society of California Pioneers, residuary donees, a part of what would in the end be coming to them. This application involved a modification of a prior decree, which had declared that no money or property was to be paid or transferred to the residuary donees until the preceding trusts should have been fully executed and performed; and arose from the fact that by the sale of the Lick House property in October, 1888, the trustees had become possessed of ample funds to complete all the prior trusts, and to pay over to the residuary donees a large part of what would be coming to them.

The various beneficiaries named in the trust deed appeared by answer and cross-complaint, and the trial resulted in a decree of the court settling the accounts of the trustees up to the sixth day of September, 1889, and granting them permission to pay the said residuaries, the Pioneers and Academy of Sciences, $300,000 each. The decree also allowed the School of Mechanical Arts interest upon the sum of $535,000 from October, 1888, that sum being the amount due from the trustees for the purpose of founding the school. Various allowances were also made from the main trust fund for the payment of attorneys' fees and other expenses.

From the foregoing decree of the court the Pioneers and Academy of Sciences have appealed upon the following grounds:—

XCVIII. CAL.—38

1. In deciding and adjudging the sum of $1,025 expenses incurred for legal services on account of the telescope, to be charged to the general fund, and in diminution of the residue.

2. In deciding and adjudging that the fees allowed to the attorneys, John H. Boalt, John B. Mhoon, and Horace W. Philbrook, aggregating $1,750, be paid out of and charged to the general fund in diminution of the residue, instead of making the fees of said attorneys payable by their respective clients.

3. In deciding and adjudging that the $661 disbursed by the president of the Lick trustees for expenses in traveling to Cleveland, Ohio, on the special business of the Lick telescope, be paid out and charged to the general fund in diminution of the residue, and not of the telescope fund.

4. In deciding and adjudging that the $849.90, expenses incurred by the trustees for models, etc., of the historical statuary, be paid out of and charged to the general fund in diminution of the residue, and not charged to the special trust providing for such statuary.

5. In deciding and adjudging that interest be allowed to said California School of Mechanical Arts, and,—

6. In deciding and adjudging that $3,500 shall be paid to Rankin and Earl, trustees of the bath house trust, out of the general fund.

The School of Mechanical Arts has also appealed from that part of the decree: 1. Permitting the Lick trustees immediately to pay over to the California Academy of Sciences and to the Society of California Pioneers the sum of $300,000 each before their execution of the other trusts precedent mentioned in the trust deed. 2. From that part of the said decree which fixes the date of October 5, 1888, as the date from which interest is to be paid on the sum of $535,000, provided in the fourteenth trust, these defendants claiming that interest should be allowed on said balance from the thirty-first day of December, 1884, to the final payment of the whole of said balance.

The trust deed of James Lick measures the powers of the trustees and is their warrant of authority. Under that deed it is made their duty to convert the trust property into money, and out of the proceeds, among other things,—" 3. To expend the sum of $700,000 for the purpose of purchasing land and construct-

ing and putting up on such land a powerful telescope (superior to and more powerful than any telescope ever yet made)." "11. To expend the sum of $150,000 . . . . in the erection and maintaining in the city of San Francisco of free baths, under the direction of certain trustees (naming them), with authority to purchase sites," etc. "13. To erect under the supervision of the said parties of the second part and their successors, at the city hall in the city and county of San Francisco, a group of bronze statuary, well worth $100,000." "14. To found and endow, at a cost of $540,000, an institution to be called the 'California School of Mechanical Arts,' the object and purposes of which shall be . . . . The institution shall be founded and endowed under the direction of J. D. B. Stillman, Horace Davis, A. S. Hallidie, John Oscar Eldridge, John O. Earl, and Hon. Lorenzo Sawyer, and the survivors of them, who are directed to acquire the site thereof and form a corporation. . . . ." "18. After discharging the trusts and making the payments hereinbefore mentioned in the order heretofore set forth, to make over and transfer the residue of the proceeds of the property hereby transferred and conveyed and intended to be in equal proportions to the California Academy of Sciences and the Society of California Pioneers."

It appears that since the sale of the Lick House property in October, 1888, the trustees have had ample funds to carry into execution the various trusts not fully administered. For reasons hereafter noticed they cannot be charged with laches as to the founding of the School of Mechanical Arts, and as to the causes which have prevented them since the date that funds have come into their hands from erecting the statuary at the city hall, and finally closing up the telescope, free bath, and other trusts, we have no knowledge, as this appeal is before us upon a judgment-roll which does not include the evidence. As to the conduct of these various trusts by the trustees, the court has found: "That all the trusts provided for in said trust deed have been executed as speedily as practicable by the plaintiffs and their predecessors, who have at all times performed their duties diligently, faithfully, honestly, intelligently, and economically, and that, although there has been a great delay in executing the trust contained in the trust deed, . . . . said de-

lay did not occur through any fault or neglect of said trutees."
This is a finding that the trustees have thus far done their work
faithfully, diligently, and well.    It is not attacked, by any of
the parties interested, and, as already stated, the evidence upon
which it is based is not·before us.    Hence, we are not in a posi-
tion to review the finding.

It was error in the trial court to allow interest to the School
of Mechanical Arts, upon the money coming to that corpora-
tion, and to charge the amount of such interest to the general
fund of the trustees, thereby reducing *pro tanto* the residue to
which the Academy of Sciences and Society of Pioneers are
entitled.    The School of Mechanical Arts insists that interest
should have been allowed it from a time long prior to 1888.
A complete answer to this contention is that the Lick trustees
had no funds in their hands prior to October, 1888, to which
the school was entitled, and, in the absence of inexcusable delay
on the part of the trustees in carrying out the various prior
trusts (and we do not hold that such delay would justify it), no
principle of law or justice would entitle the school to interest
when no funds were on hand applicable to its objects and pur-
poses.    The doctrine of *Floyd* v. *Forbes*, 71 Cal. 588, com-
pletely destroys appellants' contention in this regard, for in
that case interest was denied the telescope trust, although the
funds which were to be applied to the execution of that trust
were in the hands of the trustees.

*Floyd* v. *Forbes* is also squarely opposed to the decree of the
trial court in allowing interest to the School of Mechanical Arts
upon the amount of its trust fund from October, 1888.    It
was held in that case "that the proceeds of the trust property
constitute one fund out of which the trustees are to execute the
several trusts specified in said deed, and that the profits aris-
ing from investments of money in their hands are to be treated
as a part of such fund, and not as accruing for the benefit of
any of the said trusts in the execution of which a definite sum is
required to be paid or expended, so as to increase the amount
of such payment or expenditure."

The foregoing language of the court has no uncertain mean-
ing, and we can only account for the claims of the School of
Mechanical Arts for interest upon the amount to be applied to

the execution of its trust, for the reason that *Floyd* v. *Forbes* had not been decided when it first advanced such plea.    While the learned justice used certain language in the opinion of the court in that case as to "unnecessary or great delay" by the trustees in the execution of the trust, nothing was decided upon that line, but, to the contrary, by the language itself, the court expressly refrained from passing upon the results which would follow to the beneficiaries regarding the accumulated profits, if the trustees were guilty of unnecessary delay in carrying out the objects and purposes of James H. Lick, as manifested by his trust deed.

*Floyd* v. *Forbes* closes every avenue through which interest might be claimed by the School of Mechanical Arts, save the single one of delay resulting from neglect upon the part of the Lick trustees to perform their duties under the trust.    Inasmuch as the "School" had the right to call to its aid the power of the court to compel a prompt administration of its trust by the Lick trustees, and, inasmuch as the trustees had no direct interest in the residue of the trust estate, but that all of said residue passed to the Academy of Sciences and Society of California Pioneers, it is not plain that "unnecessary delay" upon the part of the trustees would give the school a right to interest upon the amount coming to it under the trust deed.    Certainly, under no aspect of the case could funds be taken from the money received from the Lick House sale to satisfy such claim for interest, for beyond any doubt that would be reducing the residue which Lick intended should be applied in other channels, and the Academy of Sciences and Pioneers have the same rights to the "residue" that the School has to the sum of $540,000.    Yet the claims of the School for interest as indicated by the complaint are made in no way dependent upon the fact as to whether profits had accumulated upon the main trust fund, but its pleading outlines a right to interest by reason of "great delay" upon the part of the trustees, even though the successful assertion of such rights should deplete the residue of all the original fund derived from the Lick House sale.    Such a course can neither be law nor equity.

The School has an advantage over the Academy and Pioneers in being entitled to priority of payment.    In all other respects

they stand upon the same plane, and are entitled to the same rights. Neither is favored above the other, and one cannot be allowed to encroach upon the rights of the other. The *amount* of the residue is entirely immaterial as furnishing light upon the question of the rights of the school to interest. If it is entitled to interest under the law, it is entitled to that interest though it drain the main fund and leave the residuary donees without a dollar. Neither is it clear that accumulated profits arising from unnecessary delay would give the school the right to interest; for, as said in *Floyd* v. *Forbes,* "the profits from investment pass to the main fund and become a part thereof." Thus the profits would seem to stand on common ground with the proceeds of sales of real estate, and to be expended only for the same causes. But in the present case we have neither an allegation by the school of unnecessary delay upon the part of the trustees nor a finding of the court to that effect. The court finds that there was great delay in executing the trust, but that such delay did not occur through any fault or neglect of said trustees. Great delay has occurred, but unnecessary delay has not occurred, and the very delay of which the school now complains, and upon the basis of which it asks interest, may have been occasioned, as far as the record indicates, by the acts of the party now seeking to gain an advantage by reason of such delay.

A second conclusive reason why the school's claims in this regard should be denied is apparent from the record. No funds came to the hands of the trustees which could be applied to the execution of such trust until October, 1888. The school never having become entitled to the principal fund, could not have been entitled to interest upon that fund. If authority were necessary to justify a denial of its claims for interest prior to that date, *Floyd* v. *Forbes* is that authority. From October, 1888, until October, 1890, the amount to which the school was entitled was in the hands of the Lick trustees, but the school declined to touch the money unless the entire amount was paid to it in a lump sum, and appealed to the court to support its contention to that effect. This position of the school was held untenable by the court October 7, 1890, in the case of *Floyd* v. *Rankin,* 86 Cal. 159. Consequently, the two years of delay

occasioned by this litigation is fairly attributable to its own conduct, and it cannot take advantage of its own default or mistake, to the loss of the residuary donees, even though its claims were advanced in the utmost good faith. The date of the decision of *Floyd* v. *Rankin* forms the last chapter in the history of this case, viewed by the record before us, and for the reasons given, we see nothing to support the decree of the trial court in awarding interest to the School of Mechanical Arts. It is urged in its behalf that the fact of the delay being inevitable, and that the trustees have done their full duty, are equally immaterial. Upon this question the *dictum* of *Floyd* v. *Forbes*, relied upon by the school, indicates to the contrary, and clearly intimates that the unnecessary or great delay which might give it rights to interest, should arise from a failure of a proper performance of the trust by the trustees. But, be that as it may, there is nothing in the record, looking at the case from any stand-point, that entitles the School of Mechanical Arts to interest.

It is insisted that an item of $849.90 for models, diagrams, etc., furnished under an advertisement by the trustees, to be used in the erection of the statuary at the city hall, should be charged to the statuary trust, and not to the general trust fund. These articles proved unsatisfactory and were rejected, and thus were of no assistance in carrying out this trust. The trust deed provided that the group of statuary was to be "well worth $100,000." The meaning of this provision of the deed is that $100,000 should be honestly and intelligently expended in the erection of the statuary. This contested item did not enter into the cost of construction, and in no way added anything to its value. After this money had been expended, the balance, to wit: $99,150, was not sufficient to erect a group of statuary "well worth $100,000." The item should be charged to the main trust fund.

The item of $3,500 for services rendered by Rankin and Earl, as trustees in the erection of the free baths, should be charged to the bath trust. The trust deed provides that $150,000 is to be expended in the erection and maintaining of free baths. These parties are entitled to compensation as trustees of the free bath trust, but that compensation should

come from the trust fund covered by their trust. Their services were rendered in the matter of the erection and maintaining of the free baths, and clearly become a charge upon that trust fund by the language of the trust deed itself.

The items of $1,025 for legal services for the express benefit of the telescope trust, and of $661, traveling expenses of the president of the board of trustees to Cleveland on telescope business, should be charged to the telescope trust. By the trust deed, $700,000 was to be devoted to purchasing a site and constructing the greatest telescope ever made. That was the limit of the appropriation, and the foregoing items were expended in the execution of that trust. Those expenditures were as necessary, and as much a part of the cost of the site and construction, as freight upon material, or labor upon the grounds.

The items of attorneys' fees, allowed to attorneys appearing in this action for the various beneficiaries under the trust deed, should not be charged to the main trust fund, but are matters standing between those trusts and the attorneys. Plaintiffs brought this action to have their accounts settled, and to have a partial distribution to the residuary donees, the partial distribution being a matter in which the residuary donees were directly interested, and in which the plaintiffs had no special concern. The accounts were found correct and are approved by the court, but the School of Mechanical Arts filed a cross-complaint, asking for affirmative relief. This complaint was controverted by many of the beneficiaries, and others also appeared by answer, asking affirmative relief in the nature of allowances for expenses, attorneys' fees, etc. From that time to the present the action has been transformed into a contest between the various trusts created by the trust deed as against the academy and pioneers representing the residue, each trust zealously guarding its own interests, possibly some attempting to protect their respective trust funds at the expense of the "residue"; while it has been of equal importance to the "residue" that the various expense accounts should be paid by the secondary trusts. For these reasons each particular trust should be charged with its own attorney's fee.

The court had no authority to order paid to the Academy of Sciences and the Society of California Pioneers $300,000 each

as a portion of the "residue" eventually coming to those beneficiaries. While there would be but the slightest possibility of injury resulting to the remaining trusts from such action of the court, and while it is the duty of the trustees to place the funds in their hands to the uses contemplated by the trust deed at the earliest moment consistent with the faithful and intelligent administration of the trust, and while it would be a great convenience to the academy and pioneers to secure possession of these funds at the present time, all substantial and equitable reasons supporting the decree made, yet equity is bound by rules of law; it is not above the law; it cannot controvert the law. It is strictly within the powers of a court of equity to construe the various provisions of the trust deed, and to enforce those provisions, but it cannot set them aside. It can neither create nor substitute provisions. The will of the trustor is its will. His intentions, as evidenced by his instructions, are its guiding star and the limitation of its power. It was the intention of James Lick, as clearly expressed in the eighteenth subdivision of his deed, heretofore quoted, that the residuary donees should be entitled to the "residue" after the previous trusts were discharged, and the payments therein provided for all made. The payment of the residue is the last thing to be done, necessarily so, for until the other trusts are discharged and the moneys paid, there is no residue, and considering the uncertainties of the times, there may never be. It is entirely apparent that these were the things in the mind of James Lick when he executed the paper giving away his millions for the benefit of mankind. Aside from the foregoing consideration, this matter was directly adjudicated upon in *Floyd* v. *Forbes*, 71 Cal. 593, wherein this court said: "If the construction contended for by the appellant were the correct one, there appears no good reasons why the residuaries (referring to the academy and pioneers) should not receive their residue as soon as the property was sold and the different funds created. It is evident that the donor intended that the entire property should remain as security for the different trusts in the order named."

For the foregoing reasons, let the judgment and decree be reversed and the cause remanded, with directions to the trial court to enter judgment in accordance with the views herein expressed.

McFARLAND, J., FITZGERALD, J., DE HAVEN, J., and PATERSON, J., concurred.

HARRISON, J., deeming himself disqualified, did not participate in the foregoing decision.

Rehearing denied.