WILLIAM PAINE SHEFFIELD *et al.*, Trustees *et al.*, *vs.*
MARGARET HOWARD COOKE *et al.*

JULY 8, 1916.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)    Executory Limitations.    Permanent Improvements.    Apportionment.*

The residue of the estate of testator was devised to his son and his heirs qualified by the provision in this clause of the will (15) "If my wife and my younger daughter or either of them, survive my son and his descendants, then all the estate devised and bequeathed to him and his heirs, I give devise and bequeath——all the personal property to my elder daughter if she be then living or her descendants or if neither my elder daughter nor any of her descendants be then living, to my brother. All the real estate to my wife for life and after her decease to my elder daughter for life and after the decease of my wife and elder daughter if my younger daughter be not then living, to such of my elder daughter's descendants as shall then be living, their heirs and assigns, but if my younger daughter be then living, then to such of my elder daughter's descendants as shall then be living, so long as my younger daughter shall live, and after her decease, to such of my elder daughter's descendants as shall then be living, their heirs and assigns; if however my wife dies after the decease of my elder daughter and her descendants or if my elder daughter survives my wife and leaves no descendants at her own decease or if my younger daughter survives my wife and my elder daughter and her descendants; then to my brother, his heirs and assigns."

At the time of the petition for instructions filed by the trustees appointed to exercise the powers given the executors who had deceased, the residue of the estate was vested in the infant children of the deceased son of testator, being a fee simple, subject to the payment of an annuity to the younger daughter of testator and the powers of sale, management, etc., given the executors, and also subject to the executory limitations specified in clause 15, above set out.

The trustees under the powers of the will sold certain unimproved real estate and out of the proceeds have expended certain sums for sewer and curbing assessments and for grading and otherwise improving the real estate.

*Held*, that the estate being subject to the executory limitation there was no way to value the respective interests, but the payment by the trustees of the cost of the permanent improvements out of funds realized from the sale of unproductive real estate was in itself an equitable apportionment of the assessment.

*Held*, further, that the charges for curbing, sewers and grading should be paid out of the *corpus* of the estate.

(2)  *Life Tenant and Remainderman.   Apportionment of Improvements.*

It is settled in this State that the cost of permanent improvements should be apportioned between the life tenant and remainderman in the proportion which the value of the life estate bears to the value of the entire estate.

(3)  *Compensation of Trustees.*

On the above state of facts it appeared that about three-quarters of the work of the trustees related to principal of the estate and one-quarter to the income. The will made no provision for compensation of trustees.

*Held*, that there was no fixed rule which prevented trustee's compensation being charged to principal if the circumstances warranted it and in most cases it rested in the discretion of the court.

*Held*, further, that the compensation of the trustees for making permanent improvements and for converting the real estate into personalty should be chargeable to principal and that the method of apportionment adopted by the trustees in charging three-fourths of their compensation to principal and one-fourth to income would be approved.

(4)  *Commissions of Trustee on Income.   Compensation.*

It is an open question in this State, whether trustees accounting annually may deduct commissions properly chargeable to income and also whether if a trustee fails to deduct such commissions his rights to the same are thereby lost.   There is no statute or decision in this State which determines the amount of compensation to which trustees are entitled.

(5)  *Executory Limitations.   Taxes.   Unproductive Estate.*

On the above facts *held* that the taxes assessed against the unproductive portion of the estate should be charged to principal.

(6)  *Annuity.*

By the 5th clause of the will testator bequeathed to a daughter an annuity, and by the 13th clause the residue was made expressly subject to it.

*Held*, that it is a question of the intent of a testator as expressed in the will whether an annuity is payable out of one fund rather than another, and upon the facts of the case at bar the annuity should be paid from principal.

(7)  *Dower.   Executory Limitations.*

A large amount of real estate, mostly unproductive, became vested in X under the will of his father, subject to various charges for taxes and assessments during a life estate; to annuities; to the power of the executors as to sale, etc., and to certain executory limitations.

X died and the estate descended to his children.   A portion of the estate was sold by the executors, the proceeds for a while being used for the payment

of various charges, but gradually a fund was accumulated from such sales and invested in bonds, mortgages, etc.

*Held,* that the widow of X could not claim dower either in the real estate sold or in the proceeds which had been expended.

*Held,* further, that a widow was entitled to dower in an estate held by her husband in fee, but subject to executory limitations.

*Held,* further, that as a dower right is subject to every lien or incumbrance at law or equity existing before it attaches, the charges placed upon the income and principal were superior to any right of dower of the widow of X, but as the will did not work a conversion of the real estate, under the rule that to effect a conversion it is necessary that the direction to sell the property should be mandatory and not discretionary, the widow was entitled to dower in the proceeds not necessary to pay the enumerated charges, and also in the real estate unsold.

But as to the unsold real estate the court can do no more than decree her right to such dower, there being no evidence of the value of such land and as dower is set off with regard both to quantity and value the court would be unable to make any assignment, but the widow will be entitled to dower in the proceeds of all sales that may be made of said real estate in the same manner as in the proceeds of past sales.

*(8)   Dower.   Equity.*

The Superior Court has jurisdiction of suits for dower under its general equity powers.

*(9)   Gross Sum as Dower.*

Although there is no specific statutory authority for it, a widow may be awarded a gross sum as dower in the proceeds of the sales of land when the circumstances justify it, but upon the facts in the case at bar, owing to the annuity being a superior charge the widow will be allowed annually the legal interest on one-third of the total proceeds derived from the sale of the real estate, less the payment of the necessary charges and expenses for that year.

BILL IN EQUITY for instructions.

JOHNSON, C. J.   This is a bill in equity brought in the Superior Court for the county of Providence by William Paine Sheffield and Alice H. R. Cooke, as trustees under the will of Joseph J. Cooke, and Alice H. R. Cooke, individually. The trustees ask for instructions relative to certain questions arising under the last will and testament of said Joseph J. Cooke relating to the apportionment of certain charges between principal and income, and also relating to the right of dower of said Alice H. R. Cooke.   Said Alice H. R. Cooke individually also prays for the assignment of her dower in the

residuary estate of said Joseph J. Cooke. John A. Tilling-hast, Esq., was appointed guardian *ad litem* for the infant respondents, Margaret Howard Cooke and Adelaide Welch Cooke. Scott A. Smith, Esq., was appointed guardian *ad litem* for the respondent, Alice Elizabeth Cooke, a person of unsound mind. Hugo A. Clason, Esq., was appointed guardian *ad litem* to represent contingent interests of persons not in being or not ascertainable. All the respondents of full age and of sound mind filed answers neither admitting nor denying the allegations of the bill of complaint, and submitting their interests to the protection of the court. The guardians *ad litem* also filed answers in similar form. Testimony was taken before George Farnell, Commissioner, and the case was thereupon certified to this court in accordance with the provisions of Section 35, Chapter 289 of the General Laws of 1909. None of the respondents has objected to the granting of the requests of the complainants, nor have they filed any briefs in this case. John A. Tillinghast, Esq., as guardian *ad litem* of the infant respondents, Margaret Howard Cooke and Adelaide Welch Cooke, files a brief in their behalf.

Joseph J. Cooke, the testator, died in 1882, leaving a testamentary instrument dated June 22, 1882. An appeal was taken from the probate of this instrument by the municipal court of the city of Providence, and on January 23, 1883, the Supreme Court of the State of Rhode Island entered its decree allowing and establishing said instrument as the last will and testament of Joseph J. Cooke, subject to and controlled by the modifications contained in an agreement of compromise approved by the Supreme Court the same day.

The thirteenth, fourteenth and fifteenth clauses of the will of Joseph J. Cooke are as follows:

"THIRTEENTH—All the rest and residue of my estate and property, of every kind and nature, and wheresoever situate, of which I shall die seized and possessed, or be entitled to at my decease (including the proceeds of the sale of my library

as aforesaid), I give, devise, and bequeath to my son, Henry Williams Cooke, aforesaid, to him, his heirs and assigns forever; subject, however, to the payment out of the same of the taxes and assessments on the life estate in the First clause of this my will devised to my said elder daughter as hereinbefore provided; to the payment out of the same of the said sum of Three Hundred Dollars per annum to my said elder daughter as hereinbefore provided, and of the sum of Six Thousand Dollars per annum to my said wife as hereinbefore provided; to the payment out of the same of the sum of Six Hundred Dollars per annum to my said younger daughter under the terms hereinbefore provided in her case; and to the payment out of the same of whatever sums may be required under and by virtue of the Fourth clause of this my will; also subject, if necessary, to the sale by my executors and their successors, from time to time, of portions thereof for the payment of taxes, assessments and expenses on the same; also subject to his proper support and education during his minority; and also subject to the power and discretion hereinafter given to my executors and their successors in the management and control of the same. The devise and bequest, in this clause of my will, of the rest and residue of my estate and property to my said son and his heirs is, however, qualified by the Fifteenth clause of this my will.

"FOURTEENTH—And as to the estate and property in the Thirteenth clause of this my will mentioned, being therein designated as the rest and residue of my estate and property, I give and grant to my executors, and to their successors, so long as any of the charges upon said estate and property as specified in said Thirteenth clause shall remain in force and effect, full power and authority to manage said estate and property in their absolute discretion; to invest and change investments of, to mortgage or otherwise pledge, and to sell and convey, the same, or any part thereof; to lease any of the real estate thereof for a term not exceeding twenty years, and to renew such lease to the same, or other, lessees, for another

term not exceeding twenty years, and to repeat such renewals at the pleasure of them, the said executors and their successors; and to have the same power and authority over the proceeds of such investment, lease, mortgage, pledge, sale, or conveyance, and over any property obtained, directly or indirectly, with such proceeds. Whatever part of such estate and property shall be mortgaged, pledged, or sold as aforesaid, the same shall be taken and received by the mortgagee, pledgee, or purchaser thereof wholly free and divested of any and all liability or lien for or as to the charges thereon specified in said Thirteenth clause of this my will; and no purchaser of any real estate, sold as aforesaid, shall be held responsible for the appropriation of the purchase money after the same shall have been paid to said executors, or their successors.

"FIFTEENTH—If, however, my wife, said Maria Adelaide Cooke, and my younger daughter, said Alice Elizabeth Cooke, or either of them, survive my said son, Henry Williams Cooke, and his descendants (if any there be), then all the estate and property given, devised, and bequeathed to him (and his heirs) in the Thirteenth clause of this my will I give, devise, and bequeath in manner following, to wit (subject, however, to all the charges and conditions thereon in the Thirteenth and Fourteenth clauses of this my will named):

"All the personal property to my elder daughter, said Adelaide Baker Smith, if she be then living, or, if she be not then living, to such of her descendants as shall then be living or, if neither my said elder daughter nor any of her descendants be then living, to my said brother, George Lewis Cooke. All the real estate to my said wife, for the term of her natural life, and, after her decease, to my said elder daughter, for the term of her natural life, and, after the decease of my said wife and said elder daughter, if my said younger daughter be not then living, to such of my said elder daughter's descendants as shall then be living, to them, their heirs and assigns forever, but, if my said younger daughter

be then living, then to such of my said elder daughter's descendants as shall then be living, so long as my said younger daughter shall live, and, after her decease, to such of my said elder daughter's descendants as shall then be living, to them, their heirs and assigns forever; if, however, my said wife dies after the decease of my said elder daughter and her descendants, or if my said elder daughter survives my said wife and leaves no descendants at her own decease, or if my said younger daughter survives my said wife, and my said elder daughter, and her descendants, then to my said brother, George Lewis Cooke, to him, his heirs and assigns forever."

The agreement of compromise reduced the estate given to the testator's son, Henry Williams Cooke, in the Thirteenth clause of the will to seven-ninths of the residue, giving the balance of said residue to the testator's elder daughter, Adelaide Baker Smith, and her descendants. The agreement of compromise also increased the annuity given to the testator's younger daughter, Alice Elizabeth Cooke, to $1,200, and provided that one-ninth of said annuity should be paid by the elder daughter and her descendants, and the other eight-ninths should be paid in the same manner as provided in the will with respect to the original annuity of $600. Certain changes were also made in regard to the payment of taxes, assessments and expenses. This case relates wholly to the seven-ninths of the residuary estate given to the testator's son, Henry Williams Cooke, his heirs and assigns, by the Thirteenth clause of the will as modified by the agreement of compromise.

Joseph J. Cooke left surviving him his widow, Maria A. Cooke, and his children, Adelaide Baker Smith, Alice Elizabeth Cooke and Henry Williams Cooke. Maria A. Cooke has deceased. Adelaide Baker Smith deceased, leaving as her only decendants her two children, Adelaide M. Smith, and the respondent, Joseph Cooke Smith. Adelaide M. Smith deceased unmarried and without issue. Alice Elizabeth Cooke is a person of unsound mind under guardian-

ship and is now sixty-three years of age. Scott A. Smith of the city of Providence was appointed guardian of her person and estate by the municipal court of Providence, and is still acting as such guardian. Henry Williams Cooke died in 1904, leaving surviving him his widow, one of the complainants, Alice H. R. Cooke, and two children, the respondents, Margaret Howard Cooke and Adelaide Welch Cooke, both still infants under the age of twenty-one years under guardianship of their mother appointed by the municipal court of Providence. Margaret Howard Cooke is now sixteen years of age, and Adelaide Welch Cooke is now fifteen years of age.

Henry Williams Cooke, the residuary devisee under the will of Joseph J. Cooke, died leaving a last will and testament dated January 24, 1896, which will was duly probated by the municipal court of the city of Providence. The will of Henry W. Cooke, a certified copy of which was introduced in evidence, devised and bequeathed all the testator's estate to his wife, Alice H. R. Cooke, and her heirs forever, but made no provision for the testator's two children, the respondents, Margaret Howard Cooke and Adelaide Welch Cooke, his only children, both of whom were born after the execution of the will. The Rhode Island statutes in force at the time the will was made rendered the will practically nugatory since the after-born children took the share of the estate of their father which they would have taken had he died intestate. Their interest, therefore, amounted to the entire fee of the realty, subject to the dower interest of their mother.

George Lewis Cooke, brother of Joseph J. Cooke, who was named in the Fifteenth clause of the will of Joseph J. Cooke, died in 1888, leaving a last will and testament which was duly admitted to probate in the city of Providence, by which will he gave all his property and estate to his widow, Laura Frances Cooke. Laura Frances Cooke died in 1894, leaving a last will and testament which was duly admitted to probate in the city of Providence, by which she gave and devised all

her real estate to her son, George Lewis Cooke, and Zechariah Chafee and John Russell Gladding, all of the city of Providence, and all of them being named as respondents in this bill of complaint, as trustees for the benefit of the testatrix's five children, George Lewis Cooke, Leonora Cooke Burrington, Evelina Cooke Hardy, Marietta Cooke, and Frederika Cooke. These five children above named are joined as respondents in this bill of complaint; Leonora Cooke Burrington having remarried and being now Leonora Cooke Nye, and Marietta Cooke having since married and being now Marietta Cooke White.

The original executors appointed by the will of Joseph J. Cooke have long since died, and George Lewis Cooke, Jr., who was appointed by said will as substituted executor, declined to act. William Paine Sheffield, the complainant, was appointed in 1895 by the Supreme Court as trustee to exercise the powers given to the executors by said will of Joseph J. Cooke. In 1911, the complainant, Alice H. R. Cooke, was appointed by the Superior Court as co-trustee with Mr. Sheffield to exercise the same powers. At the present time, the seven-ninths of the residue of the estate of Joseph J. Cooke, which was disposed of by the Thirteenth clause of his will, is vested in the infant respondents, Margaret Howard Cooke and Adelaide Welch Cooke, the children of the testator's deceased son, Henry W. Cooke. Their interest is a fee simple, but their estate is subject to the payment of eight-ninths of the annuity given to the testator's younger daughter, Alice Elizabeth Cooke, and the powers of sale, management, etc., given to the executors by the Fourteenth clause of the will, and also subject to certain executory limitations specified in the Fifteenth clause of the will. All the other charges mentioned in the Thirteenth clause of the will for one reason or another have ceased to exist. In case the executory limitations contained in the Fifteenth clause of the will should take effect, the estate would then go either to the respondent, Joseph Cooke Smith, son of the testator's deceased daughter, Adelaide

Baker Smith, or to the trustees under the will of Laura Frances Cooke, or to the five children of the testator's deceased brother, George Lewis Cooke. All of these parties are made parties respondent, as well as Alice Elizabeth Cooke, the annuitant. The executory limitations contained in the Fifteenth clause of the will will take effect only in case the testator's younger daughter, Alice Elizabeth Cooke, shall survive the two infant respondents, Margaret Howard Cooke and Adelaide Welch Cooke. Said Alice Elizabeth Cooke is now sixty-three years old, and Margaret Howard Cooke and Adelaide Welch Cooke are respectively 16 and 15 years old. The chances of the executory limitations taking effect are therefore very remote. If Alice Elizabeth Cooke does not survive Margaret Howard Cooke and Adelaide Welch Cooke, then upon her death the executory limitations in the Fifteenth clause absolutely fail, the estate in fee simple of Margaret Howard Cooke and Adelaide Welch Cooke becomes absolute, and the powers of the trustees contained in the Fourteenth clause of the will are terminated. There is thus every reason to expect that the respondents, Margaret Howard Cooke and Adelaide Welch Cooke, will sooner or later become absolutely entitled to the entire estate in question.

(1) The estate in question consisted originally very largely of unimproved real estate situated in the city of Providence. There was also some personal property at the time of the death of Joseph J. Cooke, but this was used up in the payment of debts and other charges. The income of the estate for many years was very small, and it was necessary for the trustees to sell a considerable portion of the real estate from time to time in order to raise money to pay the taxes, annuities and other charges. Since 1895 when Mr. Sheffield was appointed trustee one hundred forty-seven lots of land have been sold for the aggregate amount of $236,379.86. The trustees have also expended considerable sums of money upon the development and improvement of the real estate, including sewer and curbing assessments and grading, in order to place the land in a condition suitable

for sale. The trustees have gradually accumulated a
considerable amount of money derived from the sale of
real estate, and have invested a part of this in income produc-
ing bonds, and a small part of it in improved real estate.

The estate held under the Thirteenth clause of the will
and subject to the powers of the trustees consisted on January
1, 1916, of the following:

"Real estate—Providence, R. I.

| | | |
|---|---|---|
| Assessed valuation—improved... | $12,720 | |
| unimproved. | 108,920 | $121,640 00 |

Real estate—Warwick, R. I.

| | | |
|---|---|---|
| Assessed valuation—unimproved......... | | 1,480.00 |
| Bonds—cost........................... | | 60,918.40 |
| Share in Redwood Library, Newport, R. I. | | 25.00 |
| Real estate mortgages................. | | 6,825.00 |
| Cash in bank — Participation account.. | $12,578.53 | |
| Call account. | 6,970.13 | 19,548.66 |

$210,437 : 06"

Previous to 1913 the income of the estate was entirely
used up in the payment of charges, and neither Henry W.
Cooke nor his two children ever received any income from
the estate. In 1913 the trustees acting under the advice
of counsel charged certain expenses to principal instead of
income with the result that for the first time the estate pro-
duced a net income. This amount was $662.27, and was
paid by the trustees to Alice H. R. Cooke, as guardian of her
two children. In 1914 the net income, computed in the
same manner, amounted to $1,328.97, and this also was paid
to Mrs. Cooke, as guardian of her children.

It is not questioned that the corpus of the estate, subject
to the proper exercise by the trustees of the powers given in
the will, must be kept intact until the possibility of the
limitations over taking effect ceases to exist. No conveyance
by the children of Henry W. Cooke could pass an absolute

fee simple until after the death of Alice Elizabeth Cooke. The restraint on the disposition of the corpus however is no reason for holding that the children of Henry W. Cooke must pay out of income alone all trust expenses usually apportioned to life tenants. None of the parties to the suit objects to the payment of these various charges out of principal instead of out of income, while the trustees and Alice H. R. Cooke, individually, and also John A. Tillinghast, Esq., as guardian *ad litem* of the respondents, Margaret Howard Cooke and Adelaide Welch Cooke, all favor such a method of apportionment.

The trustees under the powers contained in the Fourteenth clause of the will have sold certain unimproved real estate and out of the proceeds thereof have expended certain sums for sewer and curbing assessments and for grading and otherwise improving the real estate.

The first request of the trustees for instructions is as follows: "1.—Whether the cost of making permanent improvements to said Adelaide Grove, including curbing and sewer assessments, and grading, should be charged to the principal or income of said estate of Joseph J. Cooke, or apportioned between them, and if apportioned, in what manner?"

The question of whether the cost of public improvements should be charged to principal or income has mainly arisen between life tenant and remainderman. The general rule is that the life tenant must pay all the ordinary taxes on the property during the continuance of his estate, unless there is some provision in the instrument creating the estate relieving him of this liability. *Greene* v. *Greene,* 19 R. I. 619, at 625; 16 Cyc. 632. But it has been almost uniformly held that an assessment for a public improvement is not an ordinary tax, and the question whether it must be borne by the life tenant or by the remainderman, or apportioned between the two, depends to a large extent upon the circumstances of the particular case and especially upon the probable duration of the improvement, as compared with the expectancy of life of the life tenant.

Thus if an improvement for which a special assessment is levied is of such temporary character, requiring renewal from time to time, that the life tenant may be said to reap substantially all the benefits and the remainder is not enhanced in value, the life tenant should bear the expense; but where there is a permanent improvement, increasing the value of the remainder, the assessment should be paid by the remainderman or be borne ratably by the life tenant and the remainderman.

It is a general rule that municipal assessments for permanent improvements upon land are apportionable between the life tenant and the remainderman according to the circumstances of the case and their respective interests in the property.

A few of the cases apparently throw the entire cost of a permanent improvement upon the remainderman. Most of the courts, however, even in the case of a permanent improvement or one which will probably outlast the life estate, adopt some mode of apportioning the cost between the life tenant and the remainderman. Thus in *R. I. Hospital Trust Co.* v. *Babbitt*, 22 R. I. 113 (1900), it was held that assessments for improvements of a permanent nature, such as result out of a street or construction of sewers, are to be apportioned between the life tenant and the remainderman in the proportion which the value of the life estate bears to the value of the whole estate. In *Chambers* v. *Chambers*, 20 R. I. 370 (1898), a tenant for life, charged by will with the payment of necessary taxes and repairs, who pays assessments for curbing and sewers in order to prevent the sale of the estate for the payment thereof, was held to be entitled to have the same apportioned between herself and the remainderman in the proportion which the value of the life estate bore to the value of the entire estate. In *Greene* v. *Greene*, 19 R. I. 619 (1896), it was held that outlays made by trustees on real estate, in changing the structure of the buildings in order to provide for modern improvements, especially where the changes were rendered

necessary to a considerable extent by municipal regulations, were to be regarded as outlays for improvements, and should be charged to the *corpus* of the estate. Also that outlays for putting improved real estate purchased by the Trustees in tenantable repair should also be charged to the *corpus* of the estate.

The question whether the life tenant or the remainderman must ultimately bear the cost of the improvement, or whether the same may be apportioned between them, is sometimes affected by the terms of the will or other instrument by which the life estate is separated from the remainder. In *R. I. Hospital Trust Co.* v. *Babbitt, supra,* the word "assessments" in a will directing the trustee to pay from the rents and income of a trust estate, which included real property, all "taxes, rents, assessments and expenses for insurance and repairs, and other expenses and outgoings of every nature upon or in respect of the trust estate" was held not to include assessments of a permanent character such as result from the laying out of a street or construction of sewers. So, in *Chambers* v. *Chambers, supra,* it was held that assessments for curbing and sewers are not within the provision of a will charging the tenant for life with the duty of paying necessary taxes and repairs. See, also, *Love* v. *Howard,* 6 R. I. 116 (1859); *Beals* v. *Providence Rubber Co.,* 11 R. I. 381 (1876); *Swan Point Cemetery* v. *Tripp,* 14 R. I. 199 (1883).

(2) It is, therefore, settled law in this State that the cost of permanent improvements should be apportioned between the life tenant and the remainderman in the proportion which the value of the life estate bears to the value of the entire estate.

The above authorities are concerned with cases where the question arose between the life tenant and the remainderman. The case at bar is different in that here the question arises in connection with a fee simple, subject to an executory limitation. The estate of the above respondents being subject to this limitation there seems to be no way of valuing

the respective interests in the estate.   However, in view of the fact that the trustees have paid the cost of these permanent improvements out of the funds in their hands realized from the sale of unproductive real estate, such payment by the trustees was in itself an equitable apportionment of the assessment.

In *R. I. Hospital Trust Co.* v. *Babbitt, supra,* it was held that payment of an assessment on certain unimproved lots belonging to the trust property from the proceeds of unimproved lands thereof, which after the sale formed a part of the principal of the trust estate, was an equitable apportionment of the assessment between the life tenant and the remainderman, since by such payment the life tenant lost the income of the sum paid, and the increased value from the betterment inured to the benefit of the remainderman.

There can be no question as to the compulsory payments made by the trustees for sewer and curbing assessments, and the sums expended for grading, although voluntarily made were permanent improvements of the same character and should stand upon the same footing.

The application of the rule of apportionment is quite simple in case you have the usual trust.   The value which the life estate bears to the total estate is ascertained, and the expense of betterment improvements is apportioned on the basis of that ratio.   The value of the life estate can be ascertained by the use of annuity tables showing the probable duration of life.   No way has been suggested in any of the cases and the trustees say they have not found any way in which to value an estate subject to a limitation after failure of issue.   While it is true that the limitation over is ineffective after the death of Alice Elizabeth Cooke, a person in being, the probable duration of her life could not be the basis for the valuation of the estate in the children of Henry W. Cooke.   There are several reasons for this:   First, the estate is not presently vested in Alice Elizabeth Cooke; secondly, the children of Henry W. Cooke have more than a life estate; and thirdly, while their estate is subject to

this limitation, if the gift over does not take effect before the death of Alice Elizabeth Cooke, it never will. It might be possible to value the estate if the limitation over would surely become effective, because the probable duration of the life of Alice Elizabeth Cooke would determine the probable time during which the children of Henry W. Cooke would be entitled only to income. The respective ages of Alice Elizabeth Cooke and the children of Henry W. Cooke make it improbable that this limitation will ever take effect, and it is because of this contingency that the estate in the children cannot by any known means be valued. The court must therefore adopt an arbitrary rule of apportionment for such a situation, unless the facts as they exist in this case make it unnecessary to decide what proportion the respective estates would under other circumstances contribute to betterment improvements.

It is submitted by the trustees that the facts in this case do not make it necessary for the court to decide the proportion which the children of Henry W. Cooke and the remaindermen must contribute respectively to grading, sewer and curbing assessments. Much of the land which was held by Joseph J. Cooke at the time of his death was unproductive, and as has been stated above, the trustees from time to time have converted this unproductive real estate into cash and have accumulated a considerable fund which is now yielding an income. From present indications the income from this fund will be sufficient to take care of all necessary running expenses. This conversion of the real estate has created a fund in the hands of the trustees, in which the children of Henry W. Cooke and the donees under the gift over respectively have an interest. If the children of Henry W. Cooke must contribute to these betterment improvements because they stand in relatively the same position as life tenants, a payment out of this fund would, under the authorities, amount to an equitable apportionment between these children and those who take under the gift over, since the income of the children is diminished by this payment out

of the *corpus,* and the *corpus* of the estate is diminished to that extent. If the children of Henry W. Cooke are entitled only to the income until the possibility of the limitation over taking effect has ceased, this payment out of this fund would amount to an equitable apportionment of their share under the authorities. This position is amply supported by the authorities in this State. In the case of *R. I. Hospital Trust Co.* v. *Babbitt,* 22 R. I. 113, a testamentary devise in trust directed the trustees out of the income to pay all taxes, rates, assessments, and expenses for insurance and repairs, and other expenses and outgoings of every nature upon or in respect of the trust estate, and to pay over the residue of the income to X for life, and upon her decease to convey the trust estate in fee. The court held, as stated, *supra,* that the word "assessments" did not include assessments for benefits of the estate resulting from the new layout of a street or for the construction of sewers, and that such expenses should be apportioned between the life. tenant and remaindermen in the proportion which the value of the life estate bore to the value of the whole estate. But the court further found that, "The case shows that the assessment for sewers on the unimproved lots was paid by the complainant out of the price received for certain unimproved lands of the trust estate sold by the complainant March 13, 1899, which price, after the sale, formed part of the principal of the trust estate to the income of which the life tenant was entitled during her life. We think, as contended by the life tenant, that such payment by the trustee was in itself an equitable apportionment of the assessment between herself and the remaindermen, since by such payment she loses during life the income of the sum paid and the increased value given by the betterment to the trust estate takes the place of the sum paid and enures to the benefit of the remaindermen."

There is apparently nothing in the statutes which prevents the foregoing suggested apportionment. This is not a case where the life tenant has paid the whole tax. The situation.

here is that of a common fund in which there are respective interests subject to limitations, and a fund which the trustees hold for beneficiaries having respective interests. In view of the above authorities, therefore, we decide and advise that charges for curbing and sewer assessments and for grading should be paid out of the *corpus* of the estate.

(3)    The trustees' second and third requests for instructions are as follows: "2—Whether the compensation of said Trustees for services rendered in making permanent improvements should be charged to the principal or income of said estate, or apportioned between them, and if apportioned, in what manner ?

"3—Whether the compensation of said Trustees for services in converting the real estate of said estate into personalty should be charged to the principal or income of said estate, or apportioned between them, and if apportioned, in what manner ?"

The testimony shows that the trustees have converted real estate to the amount of $236,379.86 since 1895. A large amount of these proceeds has been expended by the trustees in the payment of annuities, taxes, charges, etc. The personal property of the estate, all of which was derived from the proceeds of sales of realty amounts at the present time to $92,247.77, represented by bonds, mortgage notes, a share in Redwood Library, Newport, and bank deposits in participation account and call account.

In addition to the personal estate, there remains a large amount of the real estate which passed under the residuary clause of the will of Joseph J. Cooke to his son, Henry Williams Cooke. The assessed value of the real estate as yet unconverted is $123,120. This includes a house and lot on Thayer Street, Providence, which was purchased by the trustees with the proceeds of real estate which they had previously sold. Of the total real estate remaining unsold only $12,720 is taxed as improved property. For their services in dealing with this property, the trustees received $500 each yearly until 1915. Due to the increased work of Alice H. R. Cooke

during the past year, her compensation was $1,000, and Mr. Sheffield's remained at $500. The trustees, Mr. Sheffield and Mrs. Cooke, testified that at least three-quarters of their work as trustees related only to the principal of the estate, and not over one-quarter related to the income. They also testified that their work consisted in developing and improving the real estate, attending to selling real estate, frequent conferences with The Henry W. Cooke Company and with each other in regard to sales and in regard to the improvement of the property, visiting real estate at various times, investing the proceeds of the sale of real estate, and also collecting income of the estate and keeping the books. Under advice of counsel the trustees charged three-quarters of their compensation to principal, and one-quarter to income during the years 1913 and 1914, and propose to do the same for 1915, but they ask for the approval of the court with respect to their action. It would appear therefore that the greater part of the trustees' work related to making permanent improvements to the real estate and converting real estate into personalty.

Beginning with 1913 the trustees have paid to Alice H. R. Cooke, as guardian of the two minor children of Henry W. Cooke, the net income of the estate. The amount of income to which the guardian is entitled will be measured in part by the determination of certain questions certified to the court in this case. Among these questions are those dealing with compensation. If the trustees' compensation for services in making permanent improvements and in converting the real estate of the estate into personalty be chargeable to income, they are clearly under the law entitled to deduct the same from the amount paid over to the guardian of the two minor children. If the amount of such compensation be chargeable to principal, the net income of course will be enlarged considerably. This is not a bill for an accounting and there is considerable authority to the effect that trustees are not entitled to deduct commissions which are chargeable to *corpus* until the termination of the trust. Nevertheless

the law so holding does not prevent a decision by the court on the questions submitted to it.

The law is clear that where the trustees are accustomed to pay over the net income to the beneficiaries each year, they are entitled to deduct the commissions which are properly chargeable against income annually before making their payments. Therefore the trustees should be instructed at this time as to what portion of the trustees' compensation should be charged to principal and what portion to income.

The simple determination of whether these charges should come from principal or income does not involve a decision on the question of forfeiture by payment of the whole income to the beneficiaries. There is no case in Rhode Island holding for or against the proposition that the trustees accounting annually may deduct commissions properly chargeable to income. Neither is there any case holding for or against the proposition that if the trustee fails to deduct such commissions his rights to the same are thereby lost. Since the question is an open one in this State, the trustees ask the court, irrespective of the amount which they are entitled to charge for such services, whether or not their compensation as to these matters should be paid out of principal or out of income.

(4)

There is no provision in the will of Joseph J. Cooke providing for compensation for the trustees. The Thirteenth clause which contains the devise of the residue of his estate provides for the sale of the residue or portions thereof by the executors for the payment of "taxes, assessments, and expenses on the same," but nothing is said as to compensation.

The Fourteenth clause of the will is the clause in which the general powers of sale, investment, leasing, etc., are given to the executors and their successors, but this clause also does not contain any provision for compensation to the trustees. The common law in England which forbade compensation to trustees was early modified in America by statute or judicial decision, and trustees were generally awarded compensation in usual circumstances equal to that granted

to executors and administrators. There is apparently no statute or decision in Rhode Island which determines the amount of compensation to which trustees are entitled.

In jurisdictions in which the question of trustees' compensation has been before the court for settlement, there has been no uniform application of definite principles. It is often stated as a general rule that a trustee's compensation should be paid out of income, but many of the cases in which this rule has been applied, like cases applying the rule of apportionment between principal and income, have been cases of the usual trust where property is held for the life of one person, to be conveyed on his death to remaindermen. The general rule has been made the subject of many exceptions and there are many cases where trustees' compensation has been paid out of principal. The law as stated in 39 Cyc. 485, is as follows: "A trustee is entitled to compensation only out of property in his hands belonging to the estate; and whether his claim is primarily against one fund or against another depends upon the facts of each particular case and the character of the services rendered. If the commissions can be paid out of the income or interest of the capital, they should be so paid; but cases may occur where this cannot be done and then the commissions may be paid out of the body of the fund." So also, at page 487, it is said: "While as a general rule commissions will not be allowed to a trustee on the principal of the trust fund, until the termination of the trust, there may be circumstances of an unusual and extraordinary character which will require a departure from the general rule."

The basis for this general principle is probably the same as that which makes the ordinary expenses of a trust fund payable out of income. It seems clear that trustees' compensation is one of the expenses incident to a trust estate. Courts have generally said that one of the reasons why trustees' compensation is chargeable to income is to preserve intact the *corpus* of the trust, but the same considerations which have led to exceptions to the application of the general

rule as to the payment of expenses should apply to the apportionment of the trustees' compensation.

The cases present the same difficulty which was experienced in dealing with the trustees' first request for instructions; namely, the cases have arisen between life tenant and remaindermen, but even in such cases it is clear law that all of the trustees' compensation is not necessarily chargeable to income. In this State in *R. I. Hospital Trust Co.* v. *Waterman et al.*, 23 R. I. 342 (1901), the court held that where the change of investment of a trust fund was of benefit both to the life tenant and the ultimate legatees, there should be an apportionment of the expenses dependent upon the relative benefits resulting from the change.

There is, therefore, no hard and fast rule which prevents trustees' compensation being charged to principal if the circumstances so warrant, and in this case, as in all cases of trust estates, the matter is more or less in the discretion of the court. The court in *R. I. Hospital Trust Co.* v. *Waterman et al., supra,* said: "No rule can be established, in regard to charging the expense of a change of investment of trust funds, to be applied in all cases, because the conditions and exigencies are too diverse."

The brief for the trustees in dealing with their first request for instructions set forth the law as they understand it in regard to the apportionment of charges for permanent improvements. The cases there cited do not specifically mention that the trustees' compensation in making such improvements is considered as one of the expenses. No reason has been suggested, however, why the trustees' compensation should not be considered such an expense. In *Biddle's Appeal*, 83 Pa. St. 340 (1877), there was a trust which provided for life tenants and remaindermen. The property consisted in part of sixty acres of land, through which streets were opened and various municipal improvements such as curbing, paving, etc., were made, all of which required care and watchfulness on the part of the trustees. When the life tenant died and the property was about to be conveyed

to the remaindermen, the trustees asked for compensation for their services relating to the improvements. Objection was made that compensation for care and management could only be taken out of income. The court held that this was untenable and said that if the trustees had sold the realty, they would have received their commissions, which they did in regard to certain of the real estate. The court further said: "That they did not sell the residue was for the benefit of those in remainder. They should therefore pay for the care and management . . . but for so much of their care and management of the real estate as was directly and palpably for the interest of the remaindermen, we think they are entitled to be paid." This case is clear law to the effect that trustees' compensation for making betterment improvements is chargeable to principal.

In *Floyd* v. *Davis*, 98 Cal. 591 (1893), for the erection of the Lick Observatory, free baths for San Francisco, etc., several trust funds were created by the will of James Lick. Besides the special trust fund there was a so-called main trust fund. The question arose as to whether or not compensation for the trustees in erecting the baths should be charged to the bath trust fund or to the main trust fund. The court said, at page 599: "The item of $3,500 for services rendered by Rankin & Earl, as trustees in the erection of the free baths, should be charged to the bath trusts. The trust deed provides that $150,000 is to be expended in the erection and maintaining of free baths. These parties are entitled to compensation as trustees of the free bath trust, but that compensation should come from the trust fund covered by their trust. Their services were rendered in the matter of the erection and maintaining of the free baths, and clearly become a charge upon that trust fund by the language of the trust deed itself." See, also, *Penn-Gaskell's Est.*, 208 Pa. St. 342 (1904), in which the court allowed compensation out of principal. See *Estate of Thouron*, 182 Pa. 126 (1897).

Regarding the question of the trustees' compensation for the conversion of the realty into personalty, there is, as in the preceding question, a dearth of authority. There are, however, two cases holding that the compensation for such labor is chargeable to principal. In *Hite's Devisees* v. *Hite's Executors*, 93 Ky. 257 (1892), the court said: "The annual expenses of collecting and disbursing the income should come out of it; but the expenses of conversion and reinvestment were for the benefit of both the remaindermen and the life tenant, and it was proper to apportion them." As is stated in the argument of the trustees regarding the apportionment of the trustees' compensation, where there is a fund in which all beneficiaries have an interest, the apportionment suggested by the court in the above case can be made by paying the compensation out of the principal. In *Spencer* v. *Spencer*, 38 App. Div. N. Y. 403 (1899), Judge Cullen said: "A further claim is made by the counsel for the deceased trustee that he is entitled to full commissions on some $60,000 of personalty which was applied to the improvement of the real estate in the trust. He concedes the general rule that a mere change in the investment of the *corpus* of the trust estate is not a paying out so as to entitle the trustee to commissions on such investment. He contends, however, that a different rule applies here because the personalty has been applied to the improvement of the real estate. He argues that as the real estate will go to the remainderman under the will, the trustees can get no commissions on the principal or *corpus* of the estate at the expiration of the trust term and that, therefore, they must be entitled to such commissions when the personalty was applied to the realty or forever lose them. We are not willing to concede that, at the expiration of the trust term, the trustees might not have a lien on the real estate for their commissions on the personalty that had gone into the real estate. Certainly they would be entitled to take such commissions from any other personalty belonging to the *corpus* of the trust. However, that may be, in this case the

trustees are empowered to make sale of the realty. If they should do so, at the end of the trust they would receive full commissions on the sum realized on the sale, which would include the amount of any improvements which had been made on the property from the personalty. We think, therefore, that in this case at least the trustees were not entitled to this commission." See Loring, "Trustees' Handbook" where at p. 37 it is said: "And in cases where valuable service has been rendered to the principal fund over and above what is covered by the ordinary commission a charge on principal will be allowed . . . but the sale and conversion of real estate, or the difficult settlement of a large claim, are usually considered extra services."

The above case of *Spencer* v. *Spencer* is authority on both questions of compensation submitted by the trustees; namely, that the compensation for making improvements on realty and the compensation for the conversion of realty into personalty are both chargeable to principal.

The testator must have known the earning capacity of his estate, and, in a general way at least, the proportion which the annuities, taxes, assessments, expenses, etc., mentioned in his will, would bear to the total income. As the trustees have testified in this case, until very recently there has been no net income, even if certain expenses relative to permanent improvements, taxes on unproductive real estate, and the items of compensation submitted for instructions were all charged to principal.

In view of the fact that the testator was really providing for his son and not for the devisees over, it must have been his intention that the corpus of the estate should be at least equally liable with the income for the expenses. Throughout the will wherever a charge is laid upon the estate it is no where stated that the charge is to come out of income primarily. For example, in the Thirteenth clause of the will which contains the general devise to Henry W. Cooke, the following words appear: "subject, however, to the payment out of the same of the taxes and assessments on the life estate in the

First clause of this my will devised to my said elder daughter as hereinbefore provided; to the payment out of the same of the said sum of Three Hundred Dollars . . . ; to the payment out of the same of the sum of Six Hundred Dollars per annum to my said younger daughter . ' . . ; and to the payment out of the same of whatever sums may be required under and by virtue of the Fourth clause of this my will." The broad powers given to the trustees by the Fourteenth clause of the will: "So long as any of the charges upon said estate and property as specified in said Thirteenth clause shall remain in force and effect," would also indicate that the testator realized that it would be necessary for the trustees to pay many of these charges out of the principal of the trust.

In view of the above, we are of the opinion that the compensation of the trustees for making permanent improvements and for converting the real estate into personalty should be chargeable to principal, and the method of apportionment for the years 1913 and 1914 adopted by the trustees under the advice of counsel, viz.: charging three-fourths of their compensation to principal and one-fourth to income, is approved by the court.

(5)     The trustees' fourth request for instructions is as follows: "4—Whether the taxes assessed against the unproductive part of said estate should be charged to principal or income, or apportioned between them and if apportioned, in what manner?"

The usual rule is that taxes are to be paid from income and are charged on the life estate. Perry on Trusts and Trustees, Vol. 2, § 554: "The ordinary taxes, and the expenses in the care and management of the capital, are charges on the life estate, to be paid out of the income. But in some cases where an arrangement which gives rise to taxes is entered into for the benefit of both capital and income the taxes may be divided between them."

The difficulty of applying this rule to this trust, even if these were taxes assessed on productive real estate, would be

the same as in the apportionment of permanent improvements. There is no life estate created by the will of Joseph J. Cooke and the children of Henry W. Cooke have an absolute fee subject only to a limitation that will probably not take effect.

The taxes in question, however, are clearly payable out of principal. It is to be noted in the Trustees' request for an instruction, that the taxes were assessed against the unproductive part of the estate. As to taxes assessed against such estate, the rule is stated in 39 Cyc. 338, as follows: "Taxes generally are chargeable to and payable out of the income, on the life tenant's interest, except where the property is unproductive and yields no income. . . . " In Loring "A Trustee's Handbook," 139, it is said: "As vacant land gives no return to the life tenant, but his whole income might be used in preserving the property of the remainderman, all charges against it, including taxes, are chargeable to principal." In Perry on Trusts, Vol. 2, 916, note, the author says: "Taxes upon unimproved property which produces no income, should be paid out of the *corpus* of the estate." See, also, Howes "Income and Principal," at page 63. Among the cases cited by both text writers is that of *Stone* v. *Littlefield*, 151 Mass. 485 (1890), which is a leading case in this country on that subject. In this case Justice C. Allen said, at page 487: "The trustee received from his predecessor, as part of the trust estate, a note secured by a mortgage of real estate. For non-payment of interest, taxes, and the principal sum, the trustee foreclosed the mortgage, and afterwards sold the land. Before making the same, he was under the necessity of paying the taxes for two years, which the mortgagor ought to have paid. So far as appears, this investment has yielded no income. The question is whether this expense for taxes shall be deducted from the principal, or be taken from the income of other and productive investments of the same trust estate. The testator's widow being entitled to the use and income of all of the residue of his estate,—must that income bear the

loss which may be sustained by reason of a particular unfortunate investment ?

"We are of the opinion that it must be deducted from the principal. Otherwise, a loss upon some one investment, for which no one would be legally responsible might absorb the widow's whole income for the year, or even more. It is more just that a loss of this description should be held to diminish the *corpus* of the trust estate, so that the life tenant will receive less income, and the remaindermen less principal. A profit or gain upon an investment would go in the same way."

In *Hite's Devisees* v. *Hite's Executors*, 93 Ky. 257 (1892), there was a devise to executors and trustees with discretion to sell real estate, bonds, etc., in trust for wife and children during their lives, remainder to children's descendants: Held, that under the will the unproductive real estate was not converted into personalty from the testator's death. The court said in this connection, at page 264: "If, however, any taxes upon, or sums by way of improving, the unproductive real estate have been paid out of the income of the other estate, the same should be allowed the life tenant out of the sales of the unproductive estate. The testator never intended the life tenant to thus protect and add to the value of the real estate from which he was receiving no benefit. . . . " See to the same effect *Clark* v. *Middlesworth*, 82 Ind. 240 (1822); *Murch* v. *Smith Mfg. Company*, 47 N. J. Eq. 193 (1890); *In re Martens Estate*, 39 N. Y. S. 189 (1896).

Since the law is clear that taxes assessed against unproductive real estate are not chargeable to the life tenant, it seems plain that where the present interest in the estate is that of a fee subject to an executory devise, the taxes should be borne by the *corpus* of the trust; and such a payment of the taxes would not infringe any established rule of law nor result in an inequitable diminution of the property that might go over to those taking under the limitation. We are of the opinion and so decide that the

taxes assessed against the unproductive part of said estate should be charged against principal.

(6)    The trustees' fifth request for instructions is as follows: "5.—Whether the annuity payable to said Alice Elizabeth Cooke under the Thirteenth clause of said will, should be charged to the principal or income of said estate or apportioned between them, and if apportioned, in what manner ?

The annuity is given by the Fifth clause of the will of Joseph J. Cooke, which is as follows: "I give and bequeath to my younger daughter, said Alice Elizabeth Cooke, if she be unmarried at the time of my decease, the sum of Six Hundred Dollars per annum, so long as she remains unmarried, and no longer; the same to be paid to her in equal quarterly instalments by my executors and their successors; this limitation being made on account of the physical impropriety of her marriage."

The Thirteenth clause of the will which devises the residue of the estate of Joseph J. Cooke to Henry Williams Cooke is made expressly subject to the annuity by the following words: "subject, . . . to the payment out of the same of the sum of Six Hundred Dollars per annum to my said younger daughter under the terms hereinbefore provided in her case; . . . ." This annuity was increased to $1,200 by the agreement of compromise, eight-ninths of which was payable out of the residuary estate.

The usual principle applicable to annuities is that they are payable out of income.   As is said in 2 Cyc. 465: "The very nature of an annuity suggests that, when those charged with the payment of it have in their hands a fund producing income sufficient to pay it, the payment should be made from the income and not from principal.   But if an annuity is charged on a particular fund, both the principal and interest of the fund are applicable to its payment."   In *Cummings* v. *Cummings*, 146 Mass. 501 (1888), Judge Knowlton said: "The very nature of an annuity suggests, when those charged with the payment of it have in their hands a fund producing income sufficient to pay it, that the payment should be

made from the income, and not from the principal. In this case the payments were to be made quarterly, and the income regularly accruing would naturally be expected to be used for them, rather than sums deducted from the fund." See to the same effect *Treadwell* v. *Cordis*, 5 Gray, Mass. 341 (1855), and *Richardson* v. *Hall*, 124 Mass. 228 (1878).

In the case of annuities, as in the case of all charges that are created by will, there is no hard and fast rule which makes them payable out of one fund rather than another. It is simply a question of the intention of the testator as expressed in his will.

The Fifth clause of the will, which is the one directly creating the annuity for Alice Elizabeth Cooke, does not mention from what fund this annuity is payable. Were this clause the only one expressing the testator's intention, unless the fact that the property is left in fee subject to an executory limitation modifies the general principle, the court would probably have to hold that the payment of this annuity should be made by the trustees out of the income of the residuary estate.

The testator in the Thirteenth clause of his will, which clause is the one devising the residue to Henry W. Cooke in fee, provides: "All the rest and residue of my estate and property, . . . I give, devise, and bequeath to my son, Henry Williams Cooke, aforesaid, to him, his heirs and assigns forever; subject, however, . . . to the payment out of the same of the sum of Six Hundred Dollars per annum to my said younger daughter under the terms hereinbefore provided in her case."

If the testator had intended that this annuity should be payable out of income alone, he could easily have so stated. Instead, he expressly makes it payable out of the residue of the estate. We can account for this, probably, when we recall that practically all of the property on which the will operated was unproductive and yielded no income which would to any extent take care of the annuities created in the will. The testator probably realized the futility of charging

these annuities to income and therefore provided that they should be payable out of the residue. This is further strengthened by the fact that the testator was providing a fee subject to a limitation, not because of an intended benefit to those who would take under the gift over, but to avoid the possibility of an inheritance in his imbecile daughter.

In the Thirteenth clause of the will the testator charged upon the residuary estate given to his son, Henry. W. Cooke, an annuity of $6,000 to his wife, as well as various other sums for taxes, assessments and expenses relating to the real estate, in addition to the annuity to his younger daughter. The estate consisted largely of unproductive real estate, which the testator must have known. The same language is used with reference to the various annuities and other charges, so that if one were payable out of income, all were. If all these were payable out of income, there would clearly have been nothing left for the testator's son, who was the chief object of his beneficence. It seems clear that the testator had no such intention. In the first place, at his death it would have been impossible, as he knew, to make these payments out of income; in the second place, it would deprive his son, Henry W. Cooke, of any benefits from the estate until a considerable portion of it had been converted into money.

That, it is possible to create annuities which are payable out of *corpus* alone is a principle of law well recognized in this State. The case which is the closest to the facts of this case and a case which holds that annuities are payable out of principal is that of *Walcott* v. *Pitcher*, 7 R. I. 555 (1863). This was a bill in equity filed by an administrator of Marcy Pitcher for the purpose of obtaining a construction of a will and instructions as to his duties under the same in the payment of legacies and annuities.

The deceased had an estate real and personal of upwards of $60,000 in value, yielding an income of about $3,000 per annum, and by her will gave to each of the children of her

two stepsons a legacy of $1,000; to her niece an annuity for life of $300; and to her grandson an annuity for life of $500 by words that are almost identical with those used by Joseph J. Cooke. Her will declared that the annuities were "to be paid by my executors from my estate." The will made a like provision by annuity for each of the afterborn children of her son, who was a widower, should he marry, and provided for advancements in business for certain beneficiaries. She then gave to her only son "all the rest and residue of the rents, income, interest and dividends of all my estate, real and personal, during his natural life, to be paid to him as often as once in six months and after said rents, etc., have accrued and been received by my executor, and not by anticipation." The executor was authorized to change the investments of her estate, real and personal, "and for that purpose, or to raise money for any of the purposes hereinbefore mentioned," to sell and convey any of her estate and she gave all the residue of all her estate, real and personal, to her grandson, and any future-born children of her son in fee equally as tenants in common with remainder over to the children of her stepsons, in case her grandchildren should die before the age of twenty-one, without issue living at their death, "subject, however, to the payments of the legacies and annuities hereinbefore mentioned and to the payment, as aforesaid, of the rents, income, interest and dividends thereof, to my son during his life."

The court held that the annuities, as well as the legacies or sums in gross, were payable out of the *corpus* of the estate and not out of the income thereof. The court, through Judge Brayton, said, p. 559: "The principal reason, and, indeed, the only reason, urged for requiring the payment of the annuities from the income is, the form of the gift to the said George W., . . . The first impression given is, that it is to be diminished by payment out of it of all the prior gifts,—this legatee receiving what of it may remain after the prior gifts are satisfied. But some of those prior gifts are legacies of gross sums. Those, now become payable,

amount to the sum of $6,000. If this sum, in addition to the annuities now payable, amounting to the sum of $800, are payable from income only, three years or thereabouts must expire before this legatee can receive any portion of the income,—the yearly amount of the income from all the estate being only $3,000. . . . The purpose of the gift must fail, if these suspensions are allowed. The testatrix could not have intended this.

"Can we distinguish between the annuities and the legacies in gross ? The implication from the gift of the residue puts them upon the same footing. It may be said, indeed, as Mr. Jarman suggests was implied in the case of *Heneage* v. *Lord Andover*, 3 Y. & J. 360, that annuities, from their nature, are evidently intended to come out of income; and, indeed, we feel that it is most natural that annual payments should be made from annual receipts.

"In looking, however, at the annuities provided for, we see, that if this legatee should have other children. (a contingency for which the will provides), each of those children is to have, for its support and education, an annuity of $500; so that his means of support, if the annuities alone were payable out of the income of the estate, might be reduced to a very meagre sum, if not altogether taken away. Had the mother desired, what certainly would seem to be desirable, that the income provided for the support of this, her only son, should be liable from year to year, to as little variation in amount as might be, consistently with the payments necessary to be made to the other legatees before directed, she would desire those payments to be made from the estate, from time to time, as the several sums became payable, so that, instead of taking the whole income for the time, and wholly spending his means of support, they should be diminished only, from year to year, in proportion to, and by means only of, the diminution of the estate from which they were to be derived. . . .

"The testatrix directs that these annuities be paid 'by my executors from *my estate*,' evidently not contemplating

payment from income, for this language excludes the idea of payment from dividends, rents, or interests. By the Ninth clause, the executor is authorized to sell any of the estate, not only to change investment, but in order 'to raise money for any of the purposes hereinbefore mentioned.' These purposes were as well to pay annuities as other legacies; the testatrix, evidently, having in contemplation the sale of her estate to raise money for payment of the annuities.

. . .

"It is quite apparent from the whole of this will, that the maker contemplated that her executor should have the management, care and control of the property, real and personal; should receive the rents, interest and dividends therefrom during the life of George W. Pitcher, the son; that he should, from time to time, as occasion required, sell any part of the estate, real or personal, for the purpose of paying annuities and legacies which he was ordered to pay, and which, by the general residuary clause were charged upon all the estate; and of annual income, should pay over to the said George W., during his life, as often as once in six months, whatever may then have been actually received by him, that is, the rents, dividends, and interest of the whole estate, so long as the whole remained unsold, and the income of all the residue which, from time to time, remained unsold, after portions thereof had been disposed of and applied to the payment of the legacies, as they become payable."

This case is very similar to the case at bar. Both wills provided that the annuities were to be paid out of the estate. In the case of *Walcott* v. *Pitcher, supra,* it was provided that the annuities were "to be paid by my executor from my estate." In the will of Joseph J. Cooke, it is provided after the devise of the residue to Henry Williams Cooke that the same should be "subject, however, to the payment out of the same" of the annuities.

In the case of *Walcott* v. *Pitcher, supra,* the aggregate payment might exceed considerably the annual income, which was one of the facts relied upon by the court to show

that the testator intended the payments to be made out of principal. The same situation exists in the case at bar. The case at bar is even stronger than the case of *Walcott* v. *Pitcher, supra,* for holding that the annuities should come out of *corpus* because in the latter case after the gift of the several annuities and the possible advancements, the will contained a bequest to her only son of "all the rest and residue of the rents, etc." The court held that these words were not sufficiently strong in view of the other circumstances in the case to warrant it in holding that the annuities were payable out of income. This case has never been overruled or questioned in the Rhode Island reports and apparently settles the law for situations similar to that arising under the will of Joseph J. Cooke.

The case of *Hammond* v. *Hammond,* 169 Mass. 82 (1897), also recognizes the possibility of the payment of annuities from principal. The testator in that case gave to his wife, three sons, and a grandson each a stated sum at his decease, and the same sum annually for four years next succeeding. By a codicil he reduced the legacies to children and grandchild, but left unchanged the legacy to his wife. In the will nothing was said as to the source from which the payments were to be made, the codicil providing that the four payments to sons and grandson after his decease "shall be made semi-annual, and payable as near the middle of January and July during the four years aforesaid as shall be most convenient to my said executors," the balance of the semi-annual income, if any, to be paid to his wife "in addition to the $500 aforesaid bequeathed to her."

It appeared that a very large part of his property consisted of railroad funds on which the interest was payable semi-annually on the first days of January and July in each year, and the amount of income reasonably to be expected from them was likely to exceed the amount needed to pay the annuities.

The court held that the four payments to the sons and grandson must be made out of income, if sufficient, and that

as the codicil said nothing about the annual payments to the wife, they must be paid from capital. Judge Knowlton, speaking for the court, at page 85, said: "A majority of the court are of the opinion that the four payments to the sons and grandson should be made out of the income, if that is sufficient. The codicil says nothing about the annual payments to the wife of the testator, and these must be paid from the capital. The balance of the income, if any, after the payments to the children and the grandchild, is given to her in addition to the annual payments of $500."

Another case holding that annuities or annual charges may be paid out of principal is *Allen* v. *Barnes, Admr.*, 12 Pac. 912 Utah, 1887).

In view of the above we are of the opinion and so advise that the annuity payable to Alice Elizabeth Cooke should be paid from principal.

(7)    The trustees' sixth request for instructions is as follows: "6—Whether said Alice H. R. Cooke was vested with an estate or right of dower upon the death of her husband, said Henry W. Cooke, in 1904, and if so, in what property she is entitled to dower, and how this dower right may be valued and determined, and set aside, assigned and paid to said Alice H. R. Cooke at the present time?"

As stated above, a large amount of real estate, mostly unproductive and located in the Elmwood district of the city of Providence, became vested in fee in Henry W. Cooke under the Thirteenth clause of the will of his father, Joseph J. Cooke, subject to the charges mentioned in said Thirteenth clause, the powers of the executors mentioned in the Fourteenth clause, and the executory limitations mentioned in the Fifteenth clause of said will. This real estate, except what was sold to pay the various charges, remained vested in Henry W. Cooke until his death in 1904. As recited above, he left a will giving all his property to his wife, Alice H. R. Cooke, but as his two children were born after the execution of the will they took all his real estate by descent, subject only to the widow's dower. Since his death, as

appears in the testimony, a considerable amount of this real estate has been sold. Up to 1910, the proceeds of all sales were used necessarily for the payment of various charges. Alice H. R. Cooke cannot therefore maintain any claim for dower either in the real estate so sold or in the proceeds which have been thus expended. Since 1910, however, the proceeds of the sale of real estate made by the trustees have been gradually accumulated and partly invested in bonds, mortgages, etc., and Alice H. R. Cooke claims and has demanded her dower in this personal property and also in all the real estate at present held under the Thirteenth clause of the will. The plat which was introduced in evidence by the complainants, entitled "Land in Elmwood belonging to the Estate of Joseph J. Cooke, March, 1914," and marked "Complainants' Exhibit K," shows the various lots of land that belonged to the estate on January 1, 1916, except a cottage house on Earl street, and a house on Thayer street, in the city of Providence, and a small amount of land in the town of Warwick. The assessed valuation of all this real estate was $123,120. The personal property now held by the trustees amounts to $92,247.77. On January 1, 1916, this personal property amounted to $87,317.06. A certain amount of accumulated income is included in this personal property, the exact amount of which, however, will depend upon the decision of the court with reference to the first five requests for instructions relative to the apportionment of various charges between principal and income.

Up to the time of the death of Henry W. Cooke in 1904, Alice H. R. Cooke, released her right of dower in all conveyances of real estate by the trustees under the will of Joseph J. Cooke. Subsequent to 1904, Alice H. R. Cooke has not released her right of dower in any of this real estate, nor in any personal property derived from the sale of real estate. She did not receive any gift from her husband in lieu of her dower, and she has not elected to take any other property from her husband's estate in lieu of dower.

This request for instructions by the trustees is for the purpose of ascertaining her dower right in the remaining real estate held by them and in the proceeds of the sales of real estate since 1904. Much of the real estate has been converted by the trustees by the proper exercise of the powers given to them in the Fourteenth clause of the will, and a large amount of the proceeds has been expended for the payment of the various charges created by the will. It is in the remaining real estate and the proceeds not needed to pay charges that the trustees request a decision regarding the dower of Alice H. R. Cooke. Alice H. R. Cooke has demanded her dower in this real estate and personal property, as appears from the fact that she has joined in the bill of complaint, and has prayed that her dower be assigned and set off to her. The trustees therefore are in need of and are entitled to the instruction and advice of the court with reference to her dower right. They have the control of this real estate and personal property and the income thereof, and claims are made upon them both by the infant respondents, Margaret Howard Cooke and Adelaide Welch Cooke, or rather by their mother as their guardian, and also by Alice H. R. Cooke for her dower right. The trustees therefore cannot safely pay over any of the principal or income of the estate under their control until they have been instructed and advised by the court.

The determination of these questions involves the consideration of several points. First: Is a widow entitled to dower in an estate held by her husband in fee, but subject to executory limitations?

There is no decision in Rhode Island nor any statute which expressly covers the question of dower in an estate subject to an executory limitation. It must be noted at the outset that the limitation on the happening of which the fee in Henry W. Cooke would be terminated has not yet occurred, but it is necessary for the court to decide whether any dower set off to Alice H. R. Cooke will be terminated if the executory limitation should take effect. It has been

decided in Rhode Island that the mere fact that an estate terminates by virtue of its limitations does not prevent a husband from claiming curtesy in an estate tail.

In *Holden* v. *Wells*, 18 R. I. 802 (1895), there was a devise to the testator's daughter, Henrietta Matilda Carpenter, "To be and remain to her, the said Henrietta Matilda Carpenter and to her heirs and assigns, provided that she die leaving lineal heirs of her body. But in case that the said Henrietta Matilda shall die leaving no child or children or descendants to take and hold said real and personal estate . . . to my son, Thomas O. H. Carpenter, Jr., and to my daughter, Fanny H. Holden, equally between them and to their heirs and assigns forever." H. married W. and had a child born during her lifetime. The court held that H. took an estate tail in the devised realty. It was further held that W., the husband of H., was entitled to curtesy in the entailed estate, the court saying: "As the defendant's wife took an estate tail, then, in the real estate described in the plaintiffs' declaration, such an estate being one of inheritance, curtesy is clearly one of the incidents thereof. And it is well settled in respect to estates tail that though the issue in tail fail by the death of the child or children in the lifetime of the wife, whereby her estate at her death is at an end, yet the husband takes curtesy, the same being a right incident to such an estate."

The early law on the subject of dower in fees subject to executory limitations was somewhat confused until the decision of Lord Mansfield in the case of *Buckworth* v. *Thirkell*, 3 B. & P. 652 n. (1785). The facts in the case were as follows: Joseph Sutton devised certain lands to trustees in fee in trust to receive the rents and profits and apply them for the maintenance of Mary Barrs, granddaughter of the testator, until she should arrive at the age of twenty-one years, or be married; and from and after her attaining such age, or her marriage, he gave and devised the lands to the said Mary Barrs, her heirs and assigns forever. But in case the said Mary Barrs should happen to die

before she arrived at the age of twenty-one years, and without leaving issue of her body lawfully begotten, then, from and after the decease of the said Mary Barrs without issue as aforesaid, he gave and devised his said estates to his grandson, Walter Barrs, and to his assigns for his natural life, remainder over. Mary Barrs married Solomon Hansard, had a child by him which died during her lifetime, and herself died under the age of twenty-one years, without leaving any issue. On the trial of an action of replevin, a special case was reserved for the opinion of the court upon the above facts, whether Solomon Hansard was entitled to be tenant by the curtesy. Lord Mansfield in holding that the defendant, Solomon Hansard, was entitled to curtesy said: "It is contended that this is a conditional limitation. It is not so, but a contingent limitation; all the cases cited go upon the distinction of their being conditions, and not limitations. During the life of the wife she continued seized of a fee simple, to which her issue might by possibility inherit. I am of opinion that the defendant is entitled to be tenant by the curtesy."

The facts in *Buckworth* v. *Thirkell, supra*, appear to make the limitation over a clear case of executory devise, and the case, therefore, may be considered as expressly deciding that the determination of an estate by operation of an executory devise, does not defeat the husband's right to curtesy.

While it is true in this case that the fee has not been determined by operation of the executory devise, such a possibility exists and in the assignment of dower would have to be considered by the court. There is no distinction between cases of curtesy and those of dower with this exception—that the husband's right to curtesy depends on his having had issue that could have inherited the estate. The wife's dower is not so dependent.

The case of *Buckworth* v. *Thirkell, supra*, provoked considerable discussion among the English jurists and severe indictments of the case were made by several of them, but in

*Moody* v. *King*, 2 Bing. 447 (1825), decided, after the greater part of the discussion had occurred, the decision of Lord Mansfield in *Buckworth* v. *Thirkell, supra,* was relied upon by the court as an authority supporting its judgment. In that case the father of W. F. devised to him and his heirs forever, certain real estate, subject to the payment of an annuity; and if the said W. F. should have no issue, the estate, on his decease, was to become the property of the heir at law, subject to such legacies as W. F. might leave by will to any of the younger branches of the family. It was decided that under this devise W. F. took an estate in fee with an executory devise over, in the event (which happened) of his dying without issue, to the person who should then be the testator's heir at law. It then became a question whether the widow of W. F. was entitled to dower, and a bill having been filed by her for that purpose, a case was stated for the opinion of the judges of the Common Pleas. The decision was in her favor.

The decisions in America have generally been to the same effect. In *Evans* v. *Evans*, 9 Barr. 190 (Pa.) (1848), the testator devised lands to two sons, G. and O., their heirs and assigns, but if either should die without leaving lawful issue living at his death, his estate was to vest in the surviving brother and his heirs forever. One of these sons died without issue and his widow brought dower for the lands devised to her husband. The court held that the action at law was proper, and that she could recover. GIBSON, C. J., said: "Notwithstanding what the conveyancers and text-writers have said about the difficulty presented to us, not one of them has hinted at the true solution of it, except Mr. Preston." . . . " ' The case of a tenant in tail,' says Mr. Preston in his Abstracts of Title, Vol. 3, 372, 'is an exception arising from an equitable construction of the statute *de donis;* and the cases of dower of estates determinable by executory devise and springing use, owe their existence to the circumstance that these limitations *are not* governed by common-law principles.' The mounting of a fee on a fee by

executory devise, is proof of that. This very satisfactory solution of the doubt was glanced at, but not developed, in *Buckworth* v. *Thirkell.* Before the statute of wills, there was no executory devise; and before the statute of uses, there was no springing use. Like estates tail, which were created by the statute *de donis,* and of which there is constantly dower though tenant in tail claims *per formam doni,* it was the benign temper of the judges who moulded the limitations of the estates introduced by them, whether original or derivative, so as to relax the severer principles of the common law; and, among other things, to preserve curtesy and dower from being barred by determinations of the original estate, which could not be prevented. *Sammes and Paynes' case,* 1 Leo, 167, is an example of this temper, in the case of a springing use. A mother covenanted to stand seized to the use of her elder daughter, on condition that she would pay 100 1. to her other daughter, within a year after she should attain the age of eighteen; and if the elder should fail in payment, or die without issue before the day of payment, then to the use of the other daughter in tail. The mother died; the elder took husband, had issue, and died without issue before the day of payment; and it was adjudged that the husband should be tenant by the curtesy. *Flavell* v. *Ventrice,* 1 Roll. Abr. 676, was also the case of a springing use; in which, however, the court was divided." . . .
"It may be safely said, that *Buckworth* v. *Thirkell, Goodenough* v. *Goodenough,* and *Moody* v. *King,* had a solid foundation in the interpretation of the statutes which sustained the estate from which the curtesy or dower was derived. Lord Alvanly is reported to have said, in *Doe* v. *Hutton,* 3 B. & P. 653, that *Buckworth* v. *Thirkell* made a good deal of noise in the profession at the time it was decided—a remark which was properly disposed of by Chief Justice Best, in *Moody* v. *King.* 'Whatever conveyancers might have thought of the case,' said he, 'when it was first decided, they have since considered it as having settled the law; and it would be productive of much confusion if we were to unsettle

it again.' Including the decision then made, we have three cases in point, without an antagonist case in all the books; and if to overturn them for the sale of a technical principle would have bred much confusion then, it would breed more confusion now. The English courts have gone upon a liberal principle, and we are bound to follow them."

In *Northcut* v. *Whipp*, 12 B. Monr. 65 (1851), A., the testator, devised a portion of his property to B., his wife, for life, and after her death the same property, together with certain other lands, to C., his son, in fee. But he directed that in case his son died in the lifetime of B., or subsequently to her death, without leaving issue, then the estate should go to the sisters of the testator and to the brother of B. The son died without issue, in the lifetime of B. As to the lands devised to him immediately in fee, his widow was allowed dower, upon the ground that her issue by him, had there been any, would have taken the estate by descent; but as to the lands in which the widow of the testator had a life estate, no dower is allowed, the life estate not having terminated during the coverture. A similar decision was reached as early as 1817 in South Carolina in the case of *Milledge* v. *Lamar*, 4 Desaus, 617 (1816). See to the same effect *Fry* v. *Scott*, 10 Ky. L. R. 1013 (1889).

In *Kennedy* v. *Kennedy*, 29 N. J. L. 185 (1861), a testator devised certain lands to his son, R. H. K., during his life, and after his death to be divided among his heirs as the law might direct, and further provided, that if any of the heirs of the testator should die leaving no lawful issue, then their share or shares should be equally divided among the surviving heirs of the testator. Held, that R. H. K. took an estate in fee simple, defeasible on his death without issue him surviving; held, further, that the widow of R. H. K. was entitled to dower in the lands devised. In deciding the case, the court said: "Demandant's husband took either an estate in fee tail or in fee simple, either of which at common law, both being estate of inheritance, entitles the widow to dower if her issue might inherit the estate."

In *Landers* v. *Landers*, 151 S. W. 386 (1912) (Ky.), the court said: "The next question to be determined is: Is Nealie Landers, the widow of Bryant Landers, entitled to dower in the land in question ? It is the well settled rule in Kentucky that, where the husband owns a defeasible fee in the land, the widow on his death is entitled to dower.' *Rice* v. *Rice*, 133 Ky. 406."

The state of authorities in the United States is summed up in 14 Cyc. 906, as follows: "The question as to whether the widow of one to whom by executory devise an estate is given in fee simple, then over to another if he should die without issue, is entitled to dower in such estate, is one which has given rise to great diversity of opinion and elicited much learned discussion. The prevailing doctrine both in this country and in England is that the widow's dower is not thus defeated." See to the same effect: *Chew* v. *Chew*, 1 Md. 163 (1851); *Pollard* v. *Slaughter*, 92 N. C. 72 (1885); *Jones* v. *Hughes*, 27 Gratt. 560 (Va.) (1876); *Medley* v. *Medley*, 27 Gratt. 568 (Va.) (1876); *Tomlinson* v. *Nickell*, 24 W. Va. 148 (1884); also 27 W. Va. 697 (1886); *Smith* v. *Spencer*, 2 Jur. N. S. 778 (1856); *Doe* v. *Timins*, 1 B. & Ald. 530 (1818).

The question of a husband's curtesy in a wife's estate subject to an executory limitation has been answered in accordance with the above cases relative to dower, and the courts have held that the termination of the wife's estate does not operate to destroy the husband's curtesy. See the case of *Carter* v. *Couch*, 47 So. 1006 (Ala.) (1908), annotated in 20 L. R. A. (N. S.) 858. A group of cases which is very similar to estates in fee subject to executory limitations, should be mentioned here. Those are estates subject to conditions. Where the grantor is given a right of re-entry for condition broken, the weight of authority holds that the right of the widow to dower is terminated by re-entry of the grantor. There can be no question that the estate granted to Henry W. Cooke was not an estate on condition, and therefore an extended citation of authorities

bearing on dower in conditional estates is unnecessary. See *Sullivan* v. *Sullivan*, 22 L. R. A. (N. S.) 691, and cases there cited.  Apparently also it is possible to have an estate in fee simple subject to an executory devise in which the widow would not have dower.  Such an estate would be a fee subject to an executory limitation in case of the birth or existence of children of the devisee who, but for such devise over, would have inherited the parent's estate.  As is said in Jarman on Wills, 6th ed. (p. 848) *837:  "But an exception exists where the prior estate is determined by executory devise over, in case of the birth or existence of children who, but for such devise over, would have inherited the parent's estate: and the circumstance of the executory devise being in favor of the children themselves does not alter the case, since they would not, nor ever could, take by inheritance, but by purchase."

This objection cannot be raised to the estate subject to the executory limitation in this case, since the children of Henry W. Cooke, issue of his wife claiming dower, have already inherited the fee by operation of Rhode Island statutes, said children having been born after the execution of the will of Henry W. Cooke.

*Second.*  Is a widow entitled to dower in an estate devised to her husband subject to a power of sale in trustees? and *Third:*  If the power of sale be exercised in accordance with the provisions of the will, is the widow entitled to dower in the proceeds?

These two questions touching the dower of Alice H. R. Cooke may well be considered together.  A decision that she is entitled to dower in an estate subject to a power of sale is closely connected with her right of dower in the proceeds after the sale is completed.  The general law is to the effect that if the property descends or is deeded or willed to the husband unencumbered, the widow is not affected so far as her dower is concerned by subsequent acts of her husband concerning that property, but it is equally true that if encumbered property descends or is deeded or willed

to the husband, the wife's dower is not superior to the liens or encumbrances created prior to the husband's title. The principle is well stated in 10 Amer. & Eng. Ency. of L. 153. "The title of the dowress being a derivative of the husband and attaching instantly upon a beneficial seizin in him, it follows that her dower right is subject to all the infirmities, servitudes and burdens incident to his title before marriage, or which were contemporaneous with his seizin or an incumbrance upon it at the time of its acquisition after marriage. If there was a lien by contract or by operation of law, as a judgment lien, already upon the land at the time when her right had its inception, her claim would be subject to such lien and might be altogether defeated by it. But if at the time of marriage, or at the time of the acquisition of lands during coverture, the husband's title was free of incumbrances, the wife's claim continues, subject only to be destroyed by a conveyance in which she joined, or, in some jurisdictions, by a conveyance of the husband alone."

In *Champlin* v. *Champlin*, 16 R. I. 314 (1888), DURFEE, C. J., said: "The general doctrine is that the dower right is subject to every lien or incumbrance at law or in equity existing before it attaches." See, also, *Hudson* v. *Steere*, 9 R. I. 106 (1868); *Mey* v. *Mey*, S. C. Eq. Rep. (Richardson) 378 (1882); *Price* v. *Hobbs*, 47 Md. 359 (1877).

It is apparent, therefore, that the charges placed upon income and principal by the will of Joseph J. Cooke are superior to any right of dower to which Alice H. R. Cooke is entitled. But a situation has arisen whereby the trustees in exercising the powers of the trust, including the power of sale, have accumulated a surplus, the income of which is more than sufficient to pay the annuities and charges created by the will, and it is in these proceeds and the remaining real estate which is subject to this power of sale, but apparently will not be needed for charges, that Alice H. R. Cooke claims dower.

It is to be noted at the outset that the testator, Joseph J. Cooke, did not work a conversion of his real estate by his will.    The power of sale given to the trustees reads as follows: "All the rest and residue of my estate and property"    .    .    . "to my son, Henry Williams Cooke,"    .    .    . "*also subject*, if necessary, to the sale by my executors and their successors, from time to time, of portions thereof for the payment of taxes, assessments, and expenses on the same; *also subject* to his proper support and education during his minority; and *also subject* to the power and discretion hereinafter given to my executors and their successors in the management and control of the same.    The devise and bequest, in this clause of my will, of the rest and residue of my estate and property to my said son and his heirs is, however, qualified by the Fifteenth clause of this my will.

"Fourteenth.    And as to the estate and property in the Thirteenth clause of this my will mentioned, being therein designated as the rest and residue of my estate and property, I give and grant to my executors, and to their successors, so long as any of the charges upon said estate and property as specified in said Thirteenth clause shall remain in force and effect, full power and authority to manage said estate and property in their absolute discretion; to invest and change investments of, to mortgage or otherwise pledge, and to sell and convey, the same, or any part thereof; to lease any of the real estate thereof for a term not exceeding twenty years, and to renew such lease to the same, or other lessees, for another term not exceeding twenty years, and to repeat such renewals at the pleasure of them, the said executors and their successors; and to have the same power and authority over the proceeds of such investment, lease, mortgage, pledge, sale, or conveyance, and over any property obtained, directly or indirectly, with such proceeds. Whatever part of such estate and property shall be mortgaged, pledged, or sold as aforesaid, the same shall be taken and received by the mortgagee, pledgee, or purchaser thereof wholly free and divested of any and all liability or lien for

or as to the charges thereon, specified in said Thirteenth clause of this my will; and no purchaser of any real estate, sold as aforesaid, shall be held responsible for the appropriation of the purchase money after the same shall have been paid to said executors, or their successors."

The powers given to the trustees as above are simply for the furtherance of stipulated trusts. There is no command that all the real estate be sold and the personalty invested. If such had been the case, the real estate of Joseph J. Cooke would in a court of equity after his decease have been considered as personalty. As is said in 9 Cyc. 830: "It is a well settled rule in chancery, in the construction of wills as well as of other instruments, that when land is directed to be sold and turned into money, courts of equity in dealing with the subject will consider it as personalty."

To effect this conversion, however, it is necessary that the direction to sell the property should be mandatory and not discretionary. If the testator simply gives the trustees authority to sell without commanding or directing them to do so, there is no conversion and a subsequent sale in the exercise of the power will not work a conversion so far as interests in the proceeds are concerned. The doctrine, as stated in 9 Cyc. 831, and the cases there cited, is as follows: "As in the construction of wills the intention of the testator is the main guide. In order to work a conversion while the property remains unchanged in form, there must be a clear and imperative direction to convert it. There must be an expression in some form of an absolute intention that the land shall be sold and turned into money."

In *Anewalt's Appeal*, 42 Pa. St. 414, 416 (1862), the court lays down the rule as follows: "To establish a conversion, the will must direct it absolutely or out and out, irrespective of all contingencies. The direction to convert must be positive and explicit, and the will, if it be by will, or the deed, if it be by contract, must decisively fix upon the land the quality of money. It must be an imperative direction to sell."

The power of sale granted to the trustees by the will of
Joseph J. Cooke was not mandatory, but was given them
simply for the purpose of enabling them to pay the annuities
and charges placed upon the estate by the will and for the
purpose of changing the form of investment.   If the income
had been sufficient to take care of the charges, no sale
would have been necessary, which shows that the testator
gave the trustees a power of sale only for certain purposes,
and that any conversion if there be any, would be limited to
the amount necessary for those purposes.   Moreover, it is
not necessary to determine whether the will works a con-
version to that extent, because these charges were placed
on the estate by the predecessor in title of Henry W. Cooke.
Since Henry W. Cooke received the estate subject to these
charges, there can be no question but that his widow's
dower is inferior to them.

The question submitted by the trustees deals simply with
her right of dower to the proceeds of the sales after the incum-
brances are paid.   In *R. I. Hospital Trust Co.* v. *Harris*,
20 R. I. 160 (1897), certain residuary estate was devised to a
trustee with directions to pay therefrom to the testator's
wife an annuity of $2,000 in semi-annual instalments, and
immediately upon her remarriage or decease, to pay over,
transfer, and convey nine-tenths of said estate to the persons
and in the proportions specified in the will.   The trustee was
further directed to hold in trust the remaining tenth and to
pay the income thereof to W. H. during his life, and the
principal thereof to the latter's children, or their descend-
ants, immediately upon his decease.   General power was
given to the trustee to sell this trust estate at public or
private sale, and to convey the same to the purchaser.   The
widow of the testator died August 10th without having
remarried, and on the 8th of the following October, the
trustee sold and conveyed the property, receiving and
holding the purchase money as part of said residuary estate.
The court gave certain directions in regard to said trust in
this case, and in 20 R. I. 408 (1898), the court again con-

sidered the same will, and the court said: "We are of opinion that as the real estate was sold by the trustees subsequently to the death of the widow, not in pursuance of any direction by the testator, but merely for the purposes of the trust, its proceeds are to be treated as real estate and are to be distributed among the persons who would have been interested in the real estate had it not been sold."

In *Mary A. King* v. *LeRoy King*, 13 R. I. 501 (1882), there was a bill in equity for the construction of a will, and the question arose as to the testator's intention with reference to a possible conversion of realty into personalty. The trustees were given a power of sale for the better investment of the trust if they should deem it necessary to exercise the power. The court held that there had been no conversion, saying at p. 507: "Or, again, on the other hand, did he intend simply to give the executor or trustees under his will a power to convert, leaving it discretionary with them to convert or not? If so, the conversion will depend upon the will or discretion of the executor or trustees, and will not be regarded as consummated in law until it is consummated in fact." . . . "Of course the intention of the testator is to be ascertained by examining the will, and giving it, under the guidance of established rules and authoritative precedents, a judicial construction. The precise question under the will here is: Did the testator intend to direct an absolute out and out conversion, or only to give the trustees a power to convert, to be used or not according to their discretion? The rule for the decision of such a question as stated, and in our opinion correctly stated, by Judge Story is, that 'in general courts of equity do not incline to interfere to change the quality of the property, as the testator or intestate has left it, unless there is some clear act or intention, by which he has unequivocally fixed upon it throughout a definite character, either as money or as land.' 2 Story, Eq. Juris., § 214."

There are several cases in Rhode Island bearing on the question of the widow's dower in a surplus. In *Mowry* v.

*Bradley*, 11 R. I. 370 (1876), realty was held by W. in trust for W., S. and N., copartners, being needed to pay partnership debts on the death of N. Held, that the widow of N. could have dower only in the surplus remaining after the realty had been sold, and the proceeds, so far as needed, had been applied to the firm debts. See, also, *DeWolf* v. *Murphy*, 11 R. I. 630 (1877).

Since the will did not work a conversion, the widow is entitled to dower in the proceeds not necessary to pay the enumerated charges.

We are of the opinion and so decide in answering the Sixth request for instructions, that Alice H. R. Cooke is entitled to dower in the real estate now held under the Thirteenth clause of the will and also in all the personal property now held by the trustees and derived from the sale of real estate.

(8) Alice H. R. Cooke's prayer for dower is as follows: "Said complainant, Alice H. R. Cooke, individually, respectfully prays that this Honorable Court may decree that she is entitled to a right of dower in all the real estate now held by said trustees and in all the personal property now held by said trustees which was derived from the proceeds of the sale of any real estate belonging to said estate."

The claim of Alice H. R. Cooke is identical with that which the trustees have stated to be their view of her right of dower in the property devised to Henry W. Cooke by Joseph J. Cooke.

It now becomes necessary to discuss the question of the mode of assigning dower to Alice H. R. Cooke as involved in the Trustees's sixth request for instructions, Alice H. R. Cooke's prayer and the complainants' final prayer.

Complainants' final prayer reads: "If this Honorable Court determines that said Alice H. R. Cooke was and is so entitled to dower, said complainants request that said dower be assigned to said Alice H. R. Cooke in gross, or by the determination of a fixed charge upon the income of said estate and request that this court appoint a Master to

determine the amount of said gross sum or of said sum to be charged upon the income of said trust estate, and to grant unto your complainants such other or further relief as the nature of the case may require and to Your Honors shall seem meet."

The complainant, Alice H. R. Cooke, in her brief requests the court to decree that she is entitled to the award of a gross sum as dower in the proceeds of the sales of real estate and suggests that the absence of express statutory authority is immaterial. The court has decided in *Sprague* v. *Stevens*, 32 R. I. 361 (1911), that there is jurisdiction of suits for dower under general equity powers. Among the questions certified to the court in that case was the following: "1. Whether the Superior Court of this State has jurisdiction of suits for dower under its general equity powers." DUBOIS, C. J., in answering this question, said, p. 369: "The first question must be answered in the affirmative. . . . It is not contended that courts of equity are without jurisdiction in cases of dower, and the matter is too well settled at the present time to admit of argument."

(9) Although there is an absence of specific statutory authority for the proposition that the widow may be awarded a gross sum as dower in the proceeds of sales of land, the cases and authorities submitted we think show that such an award may be made when the circumstances justify it. We are not, however, convinced that the award of a gross sum is advisable in the circumstances of this case.

The complainant, Alice H. R. Cooke, asks that "If the court therefore decides that Alice H. R. Cooke is not entitled to have her dower assigned by the award of a gross sum, she respectfully requests this court to decree that her dower be assigned to her by payments at least annually of the legal interest on one-third of the proceeds of the sale each year of real estate remaining after all charges have been paid."

Section 2 of Chapter 329 of the General Laws of 1909 provides: "Section 2. Of inheritances that are entire, where no division can be made by metes and bounds, so that a woman

can be endowed of the thing itself, and of woodlands, she shall be endowed in a special and certain manner, as of a third part of the rents, issues, growth or profits thereof to be computed and ascertained in the manner by this chapter directed." Section 17 of the same chapter provides for the same mode of assignment in suits in equity. There is no express provision in these statutes providing for the assignment of dower by the awarding of a certain share of the rents and profits or the payment of the annual interest where the property in which the assignment is made is personalty derived from the sale of real estate. In Scribner on Dower, Vol. 2, at p. 647, it is said: "Where there has been a foreclosure and sale under a mortgage in which the widow has joined; or where the sale has been made in satisfaction of a vendor's lien or of judgments recovered prior to the attachment of dower; in all these cases, the widow is dowable of the surplus only remaining after satisfying the claim of the creditor; and the established practice, where a gross sum is not paid to the widow in extinguishment of her claim, is to order one-third of the surplus to be invested, and the annual interest accruing thereon to be paid to her during her life."

The difficulty in assigning dower in gross, which exists because of the annuity being a superior charge to the complainant's right of dower, may be remedied by allowing the widow annually the legal interest on one-third of the total proceeds which have been derived from the sale of real estate less the payment of the necessary charges and expenses for that year.

There is no authority in this State against such a mode of assignment. Since it is permitted by Section 2 of Chapter 329 in case dower is being assigned in the real estate itself, no objection could be urged to this method when employed in the assignment of dower out of the proceeds of real estate.

The only question in this mode of assignment is whether the widow takes one-third of the actual rents and profits which have been received from the property in which the assignment is made, or whether the annual interest, irre-

spective of the actual earning capacity, is taken as the criterion.

In Scribner on Dower, Vol. 2, p. 648, after the enumeration of sales made because of liens or incumbrances superior to the widow's right of dower, it is said: "In cases of the character above enumerated, the right to be endowed of the lands themselves, or of the profits issuing therefrom, is subordinate to the lien or claim under which the sale is made, and must yield to its assertion. As the widow, after the sale, is entitled to no part of the actual profits, it is immaterial to her what their actual value may be. Her claim to endowment is transferred entirely to the surplus moneys which remain, and the measure of profit to be derived from these is the legal rate of interest prescribed by law."

In *Houghton* v. *Hapgood*, 13 Pick. 154 (1832), which was a case in which curtesy was involved and where there had been a sale of the real estate, the court held at p. 158 that "The husband, during the life of his wife was entitled to the profits and income of her real estate; and he continues entitled to receive the same as tenant by the curtesy. The interest of the money for which the land sold, consequently, belongs to him, he relinquishing his claim to the land. We are aware that this may probably exceed the profits or income of the estates sold, and so probably the amount of sales exceeds the present value of the estates sold. But to these advantages, if any there be, the parties are respectively entitled." See, also, *Jennison* v. *Hapgood*, 14 Pick. 345 (1833), and cases cited in Scribner on Dower, Vol. 2, p. 648.

We are of the opinion and so decide that dower be assigned to Alice H. R. Cooke by payments annually of the legal interest on one-third of the total proceeds which have been derived from the sale of real estate less the payment of necessary charges and expenses.

In so far as she claims dower in the real estate remaining unsold, the court is unable at the present time to do more than decree that she is entitled to such dower. There was no evidence introduced of the value of the respective lots

remaining unsold, and as dower is set off with regard both to quantity and value, the court would be unable to make any assignment. We therefore decide that she is entitled to dower in the remaining real estate unsold; and that she will be entitled to dower in the proceeds of all sales that may be made of said real estate in the same manner as in the proceeds of past sales.

The questions submitted by the trustees are answered as follows:

1. The cost of making permanent improvements to said Adelaide Grove, including curbing and sewer assessments and grading, should be charged to the principal of the estate of Joseph J. Cooke.

2. The compensation of said trustees for services rendered in making permanent improvements should be charged to the principal of said estate.

3. The compensation of said trustees for services in converting the real estate of said estate into personalty should be charged to the principal of said estate.

4. The taxes assessed against the unproductive part of said estate should be charged to the principal of said estate.

5. The annuity payable to said Alice Elizabeth Cooke under the Thirteenth clause of said will should be charged to the principal of said estate.

6. Alice H. R. Cooke was vested with a right of dower upon the death of Henry W. Cooke in 1904, and is entitled to dower in the proceeds of sales of real estate made by the trustees under the provisions contained in the will of Joseph J. Cooke, subject to the charges and expenses incurred by the trustees in the execution of said powers; and also in the real estate remaining unsold. Dower should be assigned to Alice H. R. Cooke by payments annually of the legal interest on one-third of the total proceeds which have been derived from the sale of real estate less necessary charges and expenses. She will also be entitled to dower in the proceeds of such future sales of real estate in the same manner as in the proceeds of past sales.

. A decree in accordance herewith may be presented for approval and the cause will be remanded to the Superior Court for the entry of such decree when approved.

*Green, Hinckley & Allen,* for complainants.

*Frank L. Hinckley, Rush Sturges, Harold P. Salisbury,* of counsel.

*John A. Tillinghast,* for respondents.

*Murdock & Tillinghast,* of counsel.